Argued December 8, 1921, affirmed January 31, 1922.

STARK  *v.*  STATE  INDUSTRIAL  ACCIDENT COMMISSION.

(204 Pac. 151.)

Master and Servant—Injury in Play Held Compensable as "Accident Arising Out and in Course of Employment" not Due to "Deliberate Intention."

1.   Where a workman, in an establishment in which it was the custom of the men to divert the use of air hose to sport during working hours, commenced the sport and while scuffling with a fellow-workman holding a hose started to turn around and stumbled over a skid block, and in stumbling forward came within the range of the air, which entered his rectum, causing peritonitis causing death, the death resulted from an "accident arising out of and in the course of his employment" caused by violent external means, within Workmen's Compensation Law (Section 6626, Or. L.), and not from the "deliberate intention of the workman himself," within Section 6627, barring compensation for injury from such intention.

———

1.  As to whether injuries caused by sportive acts are injuries "arising out of and in the course of the employment" within the meaning of Workmen's Compensation Acts, see notes in Ann. Cas. 1913C, 11, 12, 18; Ann. Cas. 1916B, 1297, 1300, 1303, 1304; Ann. Cas. 1918B, 774, 789, 795; L. R. A. 1918E, 504, 508.

Appeal and Error—Transcript of Whole Testimony With Exceptions at Trial Certified by Trial Judge is Sufficient to Bring Testimony Before Supreme Court.

2.  A transcript of the whole testimony and all the proceedings at the trial with the exceptions taken, duly certified by the trial judge, constitutes a sufficient bill of exceptions to bring the testimony before the Supreme Court.

Appeal and Error—Findings of Fact by Trial Court cannot be Set Aside on Appeal if Supported by Competent Evidence.

3.  In a cause tried by a court without a jury, findings of fact are deemed to be a verdict, and such findings cannot be set aside on appeal if there is any competent evidence to support them.

Master and Servant—Verdict in Compensation Case Conclusive.

4.  Under Workmen's Compensation Law (Section 6637, Or. L.), the Supreme Court is bound by the verdict of the jury as to questions of fact.

Master and Servant—Finding in Favor of Compensation Claimant on Issue of Desertion Conclusive.

5.  Whether deceased workman's wife had deserted him within the meaning of Workmen's Compensation Law (Section 6626 [j], Or. L.), so as to bar her claim for compensation, *held* a question of fact for the trial court, whose findings for her supported by testimony was conclusive on appeal.

Master and Servant—Finding of Compensable Injury Involves Mixed Question of Law and Fact.

6.  The question whether an injury arose out of and in the course of the employment within the Workmen's Compensation Law is a mixed question of law and fact, and findings of the trial court thereon supported by testimony should not be disturbed on appeal.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

Upon the trial of this cause in the lower court a stipulation of the facts was entered into relative to the following questions:

"First: Whether or not decedent, Ray E. Stark, met his death as a result of an accident arising out of, and in the course of, his employment under the Workmen's Compensation Law of Oregon.

---

5.  As to when husband and wife are living together within meaning of Workmen's Compensation Act, see notes in **Ann. Cas.** 1915B, 880; **L. R. A.** 1916A, 370.

"Second: In case the first question is answered in the affirmative, is Wanda Stark, widow of decedent, entitled to compensation on her own behalf as distinguished from compensation on behalf of her child, in view of the facts relating to her separation and living apart from her husband at the time of his death?"

The substance of the stipulation of facts is as follows:

"On June 19, 1919, Ray E. Stark, deceased, was employed by the Columbia River Shipbuilding Corporation as a chipper and caulker at the wage of $6.88 per day; that both employer and decedent were working under and subject to the provision of Chapter 112, General Laws, 1913, as amended; that on June 19, 1919, said Ray E. Stark sustained internal injuries while participating in a scuffle with a fellow workman, said injuries causing the death of said Ray E. Stark on June 24, 1919. That the facts respecting said scuffle and accident are as follows:

"That the employees returned to work about 12:30 P. M. and had been working about one and one-half hours when the accident happened; W. T. Cooper, an employee, was working on tank two or three at the forward end; T. C. Turley was working on the aft end of the tank; Turley had started to use the air hose to blow the water off the bottom of the tank to ascertain whether or not the rivets were sweating or leaking and in this work used the open air hose without the air gun attached or fastened to it. Turley had just finished using his hose for blowing water off bottom of tank and had started to connect the air gun to the hose when Ray E. Stark took the hose from Turley and purposely pointed it towards Cooper; Cooper was about 15 or 20 feet from him; the air blew Cooper's hat and goggles off. Cooper had just finished disconnecting the air gun from his air hose and was preparing to blow the water off the bottom of the tank when Stark blew his hat and goggles off; then Cooper turned his air hose on Stark and was

blowing air around Stark's chest and arms and was walking towards Stark; when Cooper and Stark got close enough to each other, Stark grabbed Cooper's hose and Cooper grabbed the air hose of Stark; then one of the employees took the Turley hose from Stark and left Stark and Cooper holding the air hose used by Cooper. While Stark was holding the air hose he started to turn around and stumbled over a skid support block stumbling forward, and in stumbling the air hose got in such a position that the air from it was blown into his rectum causing peritonitis which caused his death, on June 24, 1919, at 7:00 P. M. at St. Vincent's Hospital, Portland, Oregon. On June 21, 1919, at St. Vincent's Hospital, just prior to Ray E. Stark's death, Stark made and signed the following statement in the presence of Richard Diech, Tom Coleman, Glenn Howell and Anna McMillan, which each of the parties to this stipulation agree is true, to wit:

"When asked with whom he was scuffling, he said, 'That is the man' [pointing to Cooper]. 'It was as much my fault as his; we were scuffling.' At the request of Cooper, Stark was asked who started the scuffling; answered by Stark, 'I did.'

"And as a part of this stipulation relating to the first question, it is agreed that testimony will be taken and the fact found by the court, as to whether or not it was the custom of the fellow-employees of the decedent, to use the air hose and apparatus in scuffling and horse-play prior to the happening of this accident. * *

"And as a part of this stipulation relating to the second question, it is agreed that testimony will be taken and the fact found by the court as to whether or not Wanda Stark left her husband, Ray E. Stark, on or about two weeks prior to June 2, 1919, with the intention of deserting him and not living with him again."

The claims were disallowed by the Accident Commission, upon the ground, that the injuries were not

sustained by an accident arising out of and in the course of his employment. An appeal was allowed, and the case tried before the Circuit Court without a jury. The trial court found that compensation should be allowed. The Accident Commission brings this appeal.

Testimony was taken upon the trial of the cause. The stipulation of facts was incorporated into the findings of fact by the trial court. The court also found:

"In addition to the stipulation on file herein, the court finds as a fact that at the works and shipyards of the Columbia River Shipbuilding Company, in Portland, Oregon, it was, during the latter part of 1918, and the first half of the year 1919, the custom of the employees of said company, while engaged in their work, to use the air hose and apparatus, supplied by the company for the performance of the necessary work, in scuffling, horse-play and general recreation during working hours.

"That prior to June, 1919, Wanda Stark, petitioner in this case, had ceased to reside with her husband, Ray E. Stark, and had left his home with the definite intention of not thereafter associating with him as his wife, but that she had not left with the intention of deserting him."

The court concluded as a matter of law:

"That the occurrence described in the stipulation was an accidental occurrence and arose out of and in the course of the employment of Ray E. Stark by the Columbia River Shipbuilding Company,"

and that prior to the accident Wanda Stark, petitioner, had not deserted her husband and was not living apart from him in the sense which the terms are used in Section 21, Chapter 112, General Laws of Oregon, 1913.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General and *Mr. J. A. Benjamin,* Assistant Attorney General.

For respondent there was a brief and oral argument by *Mr. Henry S. Westbrook.*

BEAN, J.—By Chapter 112, General Laws of Oregon, 1913, the legislature, recognizing that the prosecution of the various industrial enterprises which must be relied upon to create and preserve the wealth and prosperity of the state, involves the injury of large numbers of workmen resulting in their partial or total incapacity or death, that under the law as it then existed an unequal burden was cast upon its citizens, that the adjudication of the responsibility of the employer on account of injuries sustained by his workmen, entailed unnecessary cost divided between the workmen, the employers and the taxpayers, that the people of the state were subjected to a heavy burden in providing for the care and support of such injured workmen and their dependents, and that this burden should be more fairly distributed, enacted the Workmen's Compensation Law contained in Sections 6605 to 6659, Or. L. The act was amended by Laws of 1917, Chapter 288; Laws of 1919, Chapter 55; and Laws of 1921, Chapter 311. By the provisions of this act an industrial accident commission was created. Its duty and authority were defined. Hazardous occupations, employers and beneficiaries under the act were defined. By Section 6614 the elective privilege of the employer is given not to accept the act, by filing with the commission a written notice of such election. An employee may also give notice to his employer of his election not to become

subject to the act: Section 6615. By Section 6624, every employer engaged in the hazardous occupations enumerated in the act who shall not have served notice of his election not to contribute under the act, except as provided therein, is required to pay to the commission each month a certain percentage of his total pay-roll for the preceding month of workmen subject to this act at the rate set forth therein, as a part of the industrial accident fund. Such employers are required to retain from the earnings of each of his workmen one cent per day and pay the same to the commission. There is also appropriated annually after June 30, 1921, by the state a sum equal to one seventh of the total sum received under the provisions of Section 6624.

The compensation is provided in Section 6626, the first portion of which reads:

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries or dependents, if the injury result in death, shall receive compensation according to the following schedule":

Then follows a schedule of the amounts to be paid to such workman and his dependents. Section 6627 reads in part thus:

"If injury or death results to a workman from the deliberate intention of the workman himself to produce such injury or death, neither the workman nor the widow, widower, child or dependent of the workman shall receive any payment whatsoever out of the accident fund."

1. It is the position of the attorney general on behalf of the State Industrial Accident Commission that the accident in question did not arise "out of and in

the course of his employment'' within the meaning of the statute. The contrary is maintained on behalf of plaintiff. The main question is: Do the findings of fact support the judgment?

The workmen's compensation acts, while alike as to the object sought to be attained, are so numerous and so varied as to details of administration that any attempted definition of them must of necessity be general in its terms. The courts with practical unanimity have accorded to the workmen's compensation acts a broad and liberal construction in order to effectuate their evident intention and purpose. Under this rule the courts cannot do otherwise than to give the words employed their ordinary meaning. The construction given to the statute must conform to the intent of the lawmakers: Workmen's Compensation Acts, Corpus Juris Treatise, 4, 40; *Grant v. State Industrial Acc. Com.*, 102 Or. 26 (201 Pac. 438–444); *Bidwell Coal Co.* v. *Davidson*, 187 Iowa, 809 (174 N. W. 592, 8 A. L. R. 1058). The statute under consideration does not mean one thing when it is to the advantage of one employee so to maintain, and at the same time mean something to the contrary when it is to the advantage of some other employee to make a different claim: C. J. Treatise, p. 41; *International Harvester Co.* v. *Industrial Commission*, 157 Wis. 167 (147 N. W. 53, Ann. Cas. 1916B, 330.) The great object of workmen's compensation acts is to shift the burden of such economic waste from the employer to the industry in order that it may ultimately be borne by the consumer, lessen the expense to the state of caring for dependents and numerous and prolonged litigation, to protect the employer from unjust and excessive verdicts resulting from the hardship of particular cases, and to secure to an employee having

a just claim the full amount of compensation awarded him without diminution by reason of the expense of litigation.

The following is said of the Washington Compensation Act:

"It is founded on the basic principle that certain defined industries, called in the act extrahazardous, should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in any of such industries, and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received." *State* v. *Clausen*, 65 Wash. 156, 175 (117 Pac. 1101, 37 L. R. A. (N. S.) 466).

Practically all of the American statutes, while differing widely in other provisions and exceptions, provide compensation in cases of "injury" or "injury by accident," "arising out of and in the course of the employment." This phrase is borrowed from the English Workmen's Compensation Act. The terms "out of" and "in the course of" are not synonymous, and under some of the acts if either of these elements is missing there could be no recovery. These two questions are to be determined by different tests. The words "out of" refer to the origin or cause of the accident, and the words "in the course of" to the time, place, and circumstances under which it occurs. It has therefore been said that an injury which occurs while an employee is doing what he might reasonably do at the time and place, is one which arises "out of and in the course of the employment." It has been said that under the New Jersey Act, an accident which is the result of a risk reasonably incident to the employment is one which arises out of

the employment; and that the injuries for which compensation is to be paid under the Wisconsin Act are such as are incident to, and grow out of the employment. The question of whether or not the injury is one "arising out of and in the course of the employment" within the meaning of the compensation act is not to be determined by the common-law rules in negligence cases. That the injury was caused by the negligence of a fellow-servant or was contributed to by the negligence of the injured employee is no reason for disallowing compensation. It is not necessary that the injury or accident should be one reasonably to be anticipated as an incident of the employment in order that it should arise "out of and in the course of" the employment. The main purpose of the different statutes is much the same. One of the very purposes of the Compensation Act was to increase the right of employees to be compensated for injuries growing out of their employment: L. R. A. 1916A, note, pp. 232, 233.

It is not a test of the right of an employee or his dependents coming within the provisions of the act, that the circumstances should be such that a right of action could be maintained against the employer. It may be assumed that an employee coming within the provisions of the act was palpably negligent and at fault, yet this would not prevent compensation if other circumstances warranted the same: 1 Bradbury, Workman's Compensation, p. 47.

Before alluding to the circumstances in the present case we will again refer to our Compensation Act. The first clause of Section 6626 provides generally that when a workman who is subject to the act and in the services of an employer who is thus bound to contribute to the industrial accident fund shall sustain

a personal injury by accident arising out of and in the course of his employment caused by violent or external means he or his beneficiaries or dependents, in case of resulting death, shall receive compensation. There is an exception, however, to the granting of such compensation, or provision, contained in Section 6627 quoted above, prescribing the instance or circumstance under which neither the workman nor his dependents shall receive compensation. This provision is that if injury or death results to a workman from the deliberate intention of the workman himself *to produce such injury or death,* neither the workman nor the widow, widower, child or dependent of the workman shall receive any payment whatsoever out of the accident fund.'' (We italicize.) Applying the maxim, *"inclusio unius est exclusio alterius,"* to this proviso or exception, it would seem that an employee, while subject to the act and in the service of an employer who is also subject to the act, if he shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, will be entitled to compensation, although no action for negligence could be maintained against the employer under the circumstances if the statute did not exist, even if the employee himself may have been grossly negligent and largely contributed to his injury; or the injury had been the result of the negligence of a fellow-workman, or that the workman may have been at fault during the time he was in the service of his employer, and labored in a dilatory and slovenly manner, or mingled sport with his labor, if the injury or death did not result ''from the deliberate intention of the workman himself to produce such injury.'' The intent to play or the intent to take daring unnecessary chances in a

dangerous place may have been deliberate, if it was without any intention on the part of the workman to produce the injury. Applying to this clause in Section 6627, the general rules of construction, it will be noticed that the introduction of an exception or saving clause may have an important bearing upon the construction of the statute. It may show it to be more comprehensive than would appear merely from the words used, on the principle that when certain exceptions are specified no others are intended. This rule is alike applicable to grants *inter partes* and to public laws. When first there are general words and afterwards an exception of some particular, all that is not within the particular is within the general; what is not excepted is within the grant: Black on Interpretation of Laws, p. 277; 2 Lewis' Sutherland's Statutory Construction, §§ 345, 351. In the latter work we read at p. 672:

"Where there is a prohibition, grant or regulation in general words, and a saving of particular things, there is a strong implication that what is excepted would have been within the purview if it had not been excepted; and thus the purview may be made more comprehensive than it would otherwise have been. Thus if there be a grant of all trees on a piece of land, which, if nothing more had been said, would only have embraced forest trees, but there is an exception of apple trees, other fruit trees, as peach and pear trees, will pass."

In Kansas nothing save the deliberate intention of the employee to cause the injury, his willful failure to use guards or protection provided for him, his deliberate breach of some statutory regulation, or his intoxication, can deprive him of his statutory right to compensation: 4 A. L. R., note p. 124, VIIIa; *Messick* v. *McIntire,* 97 Kan. 813 (156 Pac. 740).

Even where the compensation is paid by the employer in order to defeat an award for injury under the Workmen's Compensation Act, the case must come clearly within the statutory exceptions barring the award. It is held that the burden of proof is on the employer to establish the facts constituting a bar to compensation: *Wick* v. *Gunn* (Okl.), 4 A. L. R. 107 (169 Pac. 1087).

The generally accepted theory upon which the compensation law is based is that when an employee is killed or injured there is an economic loss which must be made up, or compensated in some way; that most accidents are attributable to the inherent risk of employment, that is, no one is directly at fault, yet the burden of such loss should be borne by the industry rather than by society as a whole; and that a fund should be provided at least in part, by the industry from which a fixed sum should be set apart as every accident occurs to compensate the person injured, or his dependents for his or her loss: *State* v. *Industrial Commission*, 92 Ohio St. 434, 450 (111 N. E. 299, Ann. Cas. 1917D, 1162, L. R. A. 1916D, 944).

It is one of the principles of the workingmen's insurance and compensation laws which are the products of the development of social economic ideas that the industry which has always borne the burden of depreciation and destruction of the necessary machinery, whether such destruction was caused within or without the industry, shall also bear the burden of repairing the efficiency of the human machines necessary to the life of the industry: *Lewis etc. Co.* v. *Industrial Acc. Board*, 52 Mont. 6 (155 Pac. 268, L. R. A. 1916D, 628). In *Peet* v. *Mills*, 76 Wash. 437, 439 (136 Pac. 685, Ann. Cas. 1915D, 154, L. R. A.

1916A, 358, Workmen's Compensation Acts, C. J. Treatise, p. 9, note), we read:

"The conclusion is evident that, in the enactment of this new law, the legislature declared it to be the policy of this state that every hazardous industry within the purview of the act should bear the burden arising out of injuries to its employees; and that it was the further policy of the state to do away with the recognized evils attaching to the remedies under existing forms of law and to substitute a new remedy that should be ample, full, and complete, reaching every injury sustained by any workman while employed in any such industry, regardless of the cause of the injury or the negligence to which it might be attributed. We can conceive of no language the legislature might have employed that would make its purpose and intent more ascertainable than that made use of in the first section of the act.

"The obligation to pay compensation under the Workmen's Compensation Act equally is absolute when the fact is established that the injury has arisen 'out of and in the course of' the employment. Part II, sec. 1. It is of no significance whether the precise physical harm was the natural and probable or the abnormal and inconceivable consequence of the employment. The single inquiry is whether in truth it did arise out of and in the course of that employment." *In re Sponatski*, 220 Mass. 526, 531 (108 N. E. 466, L. R. A. 1916A, 333); C. J. Treatise, p. 74, note.

"If the nature of the employment, or the conditions under which it was pursued, or the exposure to injury it entails, or the doing of something incidental to the employment, was a proximate cause of the injury, it arises out of the employment. An injury of this description is one of the risks of the employment; for it is due to it and arises from it, either directly or as incident to it, or to the conditions and exposure surrounding it. And the proximate cause of the injury is not necessarily that which immediately arises out of the employment, but may be that which is reason-

ably incidental to it." (*Larke* v. *John Hancock Mut. L. Ins. Co.*, 90 Conn. 303 (97 Atl. 320, 322, L. R. A. 1918E, 584); C. J. Treatise, p. 74, note).

There must be a causal connection between the employment and the injury and the injury must be the rational consequence of some hazard connected with the employment. The danger to which the employee is exposed may °originate *from* the· employment or outside of it, if the exposure is peculiar to it. In the one case the conditions of danger from the conduct of the employment cause the injury; in the other the conditions of danger which arise outside the employment, but are peculiar to it, cause it: C. J. Treatise, pp. 74, 75; *Larke* v. *John Hancock Mutual Life Ins. Co.*, 90 Conn. 303 (97 Atl. 320, 322, L. R. A. 1916E, 584). Where there is an incidental or causal connection between the employment and the accident the injury is deemed to have arisen out of the former even when the connection is somewhat remote and when the direct and immediate agency is foreign: C. J. Treatise, p. 74; *Archibald* v. *Workmen's Compensation Commission*, 77 W. Va. 448 (87 S. E. 791, 792, L. R. A. 1916D, 1013). Injury from frost-bite arises out of the employment of an insurance solicitor and collector who was compelled to drive fifteen or twenty miles on a very cold day, going in and out of heated houses in making upward of fifty calls: *Larke* v. *John Hancock Mut. L. Ins. Co., supra.* Where the conditions of the employment required the employee to cross a street where he was struck by an automobile, the injury arose out of the employment: *Zabriskie* v. *Erie R. Co.*, 86 N. J. L. 266 (92 Atl. 385, L. R. A. 1916A, 315); C. J. Treatise, p. 75; *Re Sundine,* 218 Mass. 1 (105 N. E. 433, L. R. A. 1916A, 318), was a case where the employer was liable to pay compensation under

the act, and the London Guaranty & Accident Co., Ltd., insured and assumed the liability of the employer. The injury to the employee occurred upon the stairway which was not under the employer's control but afforded the only means of going to and from the work room, while leaving the premises for the purpose of procuring a luncheon. It was held that the injury "arose out of and in the course of" the employment within the meaning of the Workmen's Compensation Act.

In the *McNicol Case,* 215 Mass. 497, 498 (102 N. E. 697, L. R. A. 1916A, 306), the employee was injured and died as the result of "blows or kicks" administered to him by a fellow-workman in an intoxicated frenzy, who was in the habit of becoming so intoxicated and when in that condition was quarrelsome and dangerous. The injury came while the employee was doing work for which he was engaged. Compensation was allowed. We quote from the opinion in that case:

"An injury * * 'arises out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business,

and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." Workmen's Compensation Acts, C. J. Treatise, pp. 73, 74, note.

The Massachusetts statute, while it provides a different plan of insurance, contains language much like that of ours under consideration: Acts of Mass. 1911, Chapter 751. Part II, Section 1 reads:

"If an employee, etc., * * receives a personal injury arising out of and in the course of his employment, he shall be paid compensation by the association, as hereinafter provided, if his employer is a subscriber at the time of the injury."

Section 2. "If the employee is injured by reason of his serious and willful misconduct, he shall not receive compensation."

*In re Loper,* 64 Ind. App. 571 (116 N. E. 324), was a case of compensation for an injury " by accident arising out of and in the course of the employment." The assistant superintendent of the employer in an act of sport or horse-play turned the air from the compressor maintained at the time in the employer's factory upon the employee which caused him to jerk quickly and strain his body. At the time the employee was suffering from an abscess in the region of the gall bladder. The strain ruptured the abscess and resulted in acute general peritonitis, which caused the employee's death. The employees had established the custom of using the air-compressor to blow the dust off their clothes. The employees had also formed the habit of using the compressor in acts of sport or horse-play by turning the air therefrom upon one another. The deceased

had frequently participated in such sport to the knowledge of the superintendent. No objection was made. Compensation was allowed. The opinion reads at 64 Ind. App., p. 576, (116 N. E., p. 325):

"The existence of a duty on the part of the employer and its breach resulting in injury to a workman, however, are not the tests by which the right to an award under compensation acts is determined. A duty and its breach is negligence, but negligence on the part of the employer is not essential in order that there may be compensation under such acts. The test of the right to compensation under such acts, in so far as concerns the element now under consideration, is whether the injury resulted from some peril incident to the employment; whether the cause of the injury, although not foreseen, may reasonably be deduced from the circumstances and surroundings peculiar to the place, and under which the workman was required to perform his labors, regardless of whether such perils or surroundings involve negligence on the part of the employer."

The Indiana Compensation Act contains this provision, Acts of Indiana 1915, p. 394:

"Section 8. No compensation shall be allowed for an injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, and willful failure or refusal to use a safety appliance or perform a duty required by statute."

This provision is much broader than the one quoted above from our statute.

In several of the cases it is indicated that where the injury is caused on account of the general surroundings of the place in which the injured employee is laboring and particularly where the instrument or appliance which is a part of the plant and used in the prosecution of the work is what causes the injury, or

is a concurring cause, the accident may be said to arise out of and in the course of the employment: *Heitz* v. *Rupert,* 218 N. Y. 148 (112 N. E. 750, L. R. A. 1917A, 344); *Rayner* v. *Sligh etc. Co.,* 180 Mich. 168 (146 N. W. 665, Ann. Cas. 1916A, 386, L. R. A. 1916A, 23, notes).

The cases direct attention to the difference in the several statutes. It should be noticed that the present proceeding under our statute is not for the purpose of fixing the liability upon the employer. The provisions of our law are in the nature of an insurance. It is as much for the benefit of the employer, if not more, that an injured workman and his dependents be compensated, as it is to anyone else.

Under many of the statutes if the injury is caused by the "wrongful act" or "willful misconduct" of an employee compensation cannot be allowed. Under our statute if the injury or death results to a workman from the deliberate intention of the workman himself "to produce such injury" compensation cannot be allowed. It is not enough to bar compensation, that the injury occurred by reason of the wrongful act of the workman, if he did not intend to produce the injury.

The injury in question was caused by an industrial accident. It was a peril of the service. Under the usual conditions there prevailing the employees were more or less subject to such peril. It was an unexpected accident, but nevertheless may reasonably be said to have arisen out of and in the course of the employment. It was an incident of such employment by reason of the appliance used in the work, and the custom which prevailed of the employees, without the infraction of any enforced rule of the establishment, diverting the use of the air hose to sport. The

play which had been going on between Stark and Cooper was entirely mutual. The question as to who started the sport can become material only for the purpose of fixing the fault, and as we have already pointed out, fault of the injured employee under certain conditions, such as prevailed in this case, does not constitute a reason for not allowing compensation. This is not an action against the employer.

The contention of the attorney general on behalf of the State Industrial Accident Commission, to the effect that Stark and Cooper were at fault in the manipulation of the air hose partakes of the nature of contributory negligence, and assumption of the risk, of an act of a fellow-servant, neither of which have any place in the Workmen's Compensation Act. Some of the cases cited were brought under the Employers' Liability Act: See *Knopp* v. *American Car Co.*, 186 Ill. App. 605. Other cases are considered much as though they were under such an act, and apparently some of the workmen's compensation acts partake of the nature of employer's liability laws, and the cases are brought to enforce compensation from the employer: See Laws N. J. 1911, Chapter 95, p. 134; *Pierce* v. *Bayer-Van Kuran, Lbr. Coal Co.*, 99 Neb. 321 (156 N. W. 509, L. R. A. 1916D, 970), a case under the Employers' Liability Act which contains this: "except accidents caused by, or resulting in any degree from willful negligence, as hereinafter defined, of the employee." In *Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682 (158 Pac. 212, L. R. A. 1916F, 1164), the syllabus reads:

"The fall of an employee down a flight of stairs while engaged in the course of his employment, occasioned by the playful act of a coemployee in thrusting a newspaper in his ribs with intent to tickle him,

is not an accident 'arising out of' his employment, within the meaning of the Workmen's Compensation Act, and injuries resulting therefrom are not compensable."

The opinion relates to the liability of the employer, and reads at page 685:

"We cannot see that it is our duty to measure the dynamics of assaults and to hold that the master must be charged with foreseeing and insuring against those which are playfully intended and which may be sanctioned by a custom existing among his servants."

In the case at bar it is clear that at the time of the accident Stark and his employer were subject to the Compensation Act. Stark, while in the service of his employer, sustained a personal injury by accident. He had immediately prior to the accident been engaged in sport or horse-play. He appears to have desisted therefrom, handed the hose which he had obtained from Turley to another workman, "started to turn around" and stumbled over a "skid support block" and by so doing came within the range of the air from the air-compressor. It is not shown that Cooper purposely aimed the air hose at Stark at that time. It may be said that two things concurred to cause the injury; first, stumbling over the skid block; second, coming in contact with the air from the air-compressor. Both the skid block and the air-compressor were a part of the surroundings under which he had labored for more than a year. It is not necessary to say that the employer was at fault or that Cooper was at fault, or that Stark was free from fault. It might be remarked parenthetically, that it is not to be supposed that a crew of men could be obtained unless some of them during working hours would play practical jokes on their fellow-workmen, especially if such men were red-blooded Americans.

It is not conceivable that it was the intention of the legislature to preclude an injured workman or his beneficiaries from the benefits of the Workmen's Compensation Act for the reason that at the time of, or immediately prior to, the accident causing the injury such workman had been engaged in play, unless the injury or death results to such workman "from the deliberate intention of the workman himself to produce such injury." We think it may fairly be said under the facts in this case that the accident arose "out of and in the course of his employment." It was unquestionably caused by violent external means. The pressure in the air hose varied from seventy to about one hundred and ten pounds to the square inch. The appliance was known by some of the workmen to be an instrument of danger.

It is claimed on behalf of defendant that the court erred in finding that Wanda Stark, plaintiff, had not deserted her husband. Section 6626, Or. L., subdivision (j), provides that a husband or wife of an injured workman who has deserted and is living apart from the injured workman at the time of the injury shall not be a beneficiary under this act.

2. As we understand the argument, counsel on both sides consider that there is no bill of exceptions in the record in this case. We find, however, a transcript of the whole testimony and all of the proceedings at the trial with the exceptions taken at the trial, duly certified by the trial judge. This constitutes a sufficient bill of exceptions to bring the testimony before this court: Section 171, Or. L.; *Malloy* v. *Marshall-Wells Hdwe. Co.*, 90 Or. 303 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589); *Farmers' etc. Bank* v. *Davis*, 93 Or. 655 (184 Pac. 275); *Hartman* v. *Selling*, 97 Or. 368, 386 (189 Pac. 887, 192 Pac. 408).

3. We have carefully read the testimony. This, however, does not change the result in this case. In a cause tried by the court without a jury the findings of fact are deemed to be a verdict: Section 159, Or. L. In construing this section this court has repeatedly and uniformly held that such findings of the trial court cannot be set aside on appeal if there is any competent evidence to support them: *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847); *Smith* v. *Badura,* 70 Or. 58 (139 Pac. 107); *Gilbert* v. *Sharkey,* 80 Or. 323 (156 Pac. 789).

4. In a case under the Workmen's Compensation Act, the court is bound by the verdict of a jury as to a question of fact: Section 6637, Or. L.; *Grant* v. *State Industrial Acc. Com.,* 102 Or. 26 (201 Pac. 438.)

5. At the time of the injury of Stark, his wife, who was in a delicate condition, was stopping at the home of her mother and there had been a disagreement between her and her husband in regard to employing a chiropractic physician. The testimony supports the finding that she had not deserted her husband and was not living apart from him at the time of the injury within the meaning of the Workmen's Compensation Act. Under the circumstances of this case this was a question of fact.

6. There was testimony in the case to sustain all of the findings of the trial court, including the finding that the injury of Stark was caused by accident arising out of and in the course of his employment: Workmen's Compensation Acts, Corpus Juris Treatise, p. 59, § 50. This was a mixed question of law and fact: Bradbury's Workmen's Compensation (3 ed.), p. 1007, § 25; *Grant* v. *State Industrial Acc.*

*Com., supra.*   Therefore such findings should not be disturbed.

The judgment of the Circuit Court is affirmed.

Affirmed.

Burnett, C. J., and Brown and McCourt, JJ., concur.