TEXAS EMPLOYERS' INS. ASS'N v. GILL.
(No. 2138.)

(Court of Civil Appeals of Texas. Amarillo. May 9, 1923. Rehearing Denied June 6, 1923.)

1. Master and servant ⬪373—Shooting of employee by watchman held compensable as injury in "course of employment."

Where employees drilling an oil well had the right to use a road through a farmhouse yard under an agreement between the employer and the occupant of the premises that he should be a watchman, and one of the men, while returning at night with food supplies, was shot by the watchman while acting in pursuance of his duty to prevent trespassing, held that, even if the watchman acted in a reckless manner, and the employees acted negligently in failing to give signals on entering the premises, the injury was compensable as one having to do and originating with the work within the statutory definition of the term "injury in course of employment," which excludes injury by an act of a third person intended to injure the employee because of reasons personal to him.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

2. Master and servant ⬪417(5)—Instruction defining compensable injury sustained.

Where the court's definition of the term "injury sustained in course of employment" is not in the language of the compensation statute, but is substantially the same as the statute, error cannot be predicated thereon, though the practice of varying the statutory definition is improper.

3. Trial ⬪351(5)—Refusal to submit issue as to whether compensation claimant was shot for personal reasons held not error in view of charge given.

In an action for compensation for injuries to an employee shot by a watchman, where the court charged the jury in the language of the statute that the term "injury sustained in the course of employment" did not include injury caused by a third person, there was no error

in refusing to submit an issue as to whether the watchman shot plaintiff for personal reasons.

4. Costs ⬪238(3)—Costs of appeal not recovered where remittitur comes too late.

Where offer of an appellee to remit comes too late, he cannot recover costs of appeal.

Appeal from District Court, Clay County; H. F. Weldon, Judge.

Proceeding under the Workmen's Compensation Act by J. H. Gill, for compensation for injury, opposed by Thomas M. Sessums, employer, and the Texas Employers' Insurance Association, insurer. The Industrial Accident Board denied an award, and on appeal judgment was rendered for claimant, and insurer appeals. Affirmed on condition of remittitur.

Lawther, Pope & Leachman, of Dallas, and Taylor, Allen, Muse & Taylor, of Henrietta, for appellant.

Weeks, Morrow & Francis, of Wichita Falls, for appellee.

BOYCE, J. J. H. Gill, an employee of Thomas M. Sessums, a member of the Texas Employers' Insurance Association, brought this suit to recover compensation under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), for injuries alleged to have been sustained in the course of his employment. This injury was the result of one Salisbury shooting the plaintiff under circumstances hereinafter detailed. The claim was denied by the Industrial Accident Board, and the claimant appealed to the district court of Clay county, where judgment was rendered awarding him the compensation claimed.

The principal question in the case is whether the evidence is sufficient to support a finding that injury was sustained by claimant in the course of his employment. The facts on which this question is to be answered are as follows:

Gill was employed by Sessums as a helper and cook in the work of drilling an oil well. Sessums boarded the men, furnished a shack on the premises, with beds, cooking utensils, etc., for their use. He also furnished the provisions, and it was part of Gill's duties to do the cooking. Gill also attended to ordering the provisions and bringing or having them brought out to the premises. It was the custom for the men to go to Wichita Falls Saturday evening after the day's work was over and return to the lease Sunday evening or night, spending the interim in rest and recreation. These trips were made in an automobile belonging to one of the employees. On these visits it was Gill's custom to get the provisions for the ensuing week, and bring them back as the party returned. Entry to the property on which the well was

located was had by passing through the yard surrounding a farmhouse located on the premises covered by the oil lease, the road passing through two gates at this yard. This farmhouse was occupied by one Salisbury, probably a tenant on or the owner of the land on which the well was being drilled. Sessums had (according to his testimony) an agreement with Salisbury that Salisbury should "watch the well and keep people out of there at all times, because we did not want any visitors at any time, and after the fellow across the way closed his gate that was the only ingress and egress." One of the witnesses testified that Sessums told him that "these men were on duty, and there had been some objection to them going through the place, and that he had arranged with the men who owned the place and told them these men must go through the place."

On the Saturday evening before Gill was shot he, with three other men, went into Wichita Falls in a car owned and driven by one of his coworkers. On Saturday night after arrival at Wichita Falls he placed an order for groceries which on this occasion were to be brought out by Sessums on Monday morning. On Sunday night the party met by arrangement at a restaurant preparatory to returning to the shack where they were to sleep that night. At this time Gill purchased some bread and milk to take back for use the next morning at breakfast. They left town about 12:00 o'clock, and after they had passed through one of the gates at Salisbury's house, and were about 50 yards from the house were without warning fired upon by Salisbury, the shot taking effect in Gill's back, and injuring him severely. Gill testified that as they were going to town Saturday evening they were accosted by Salisbury; that he (Gill) did not hear the conversation that ensued, but his companions reported to him that Salisbury was mad because of the conduct of some "wild women" who had been at the oil well and had insulted his wife. "The boys told me he was mad because of this treatment he claimed his wife had received at the hands of these women. I didn't hear him say anything about us coming through there. The boys told me he said he wanted us to give some signal when we came through; that he was not going to allow those women going down there and cutting up." In another part of his testimony he said: "I heard that Mr. Salisbury was mad at us, claiming we had stolen some of his chickens." He also said that he was personally friendly with Salisbury and the evidence is sufficient to show that Gill nor any of the men with him on this occasion had anything to do with the presence of the objectionable women at the oil well.

In one of the affidavits filed by Gill in support of his claim and introduced in evidence by the defendant, Gill makes this statement:

"I can give no reason on earth as to why he [Salisbury] shot at us, except he claims to have shot in the direction of the car for the purpose of stopping the car so he could see who was in the car. I am informed that he was employed by Sessums as a watchman on the lease."

This is about all the evidence in the record that throws any light on the controversy as to the liability of the insurance association. While it is not as satisfactory as it might be, we are of the opinion that it is sufficient to warrant a finding that Salisbury was at the time of the shooting acting in pursuance of his duty, recklessly, it may be, for the purpose of preventing the entry of trespassers on the premises.

The statutory definition of the term "injury sustained in the course of employment" expressly excludes "an injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment," and expressly includes "all other injuries [not expressly excluded] of every kind and character having to do with and originating in the work * * * of the employment, received by an employee while engaged in or about the furtherance of the affairs * * * of his employer, whether upon the employer's premises or elsewhere." Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82. If we are correct as to the conclusion that may be drawn from the facts as above stated, then the injury sustained in this case does not come within the terms of the exclusion of the statute, just quoted, and we have only to determine whether it is within the inclusive provision.

Gill's right to use the road through Salisbury's yard was derived from his employment, and "any risk arising from such use was incident to the employment." If the injury had been the result of some permanent defect in this way of entry, it would not be doubted that the injury had to do with and originated in the work. Lumberman's Reciprocal Association v. Behnken (Tex. Sup.) 246 S. W. 74, citing Honnold, vol. 1, § 122, and other authorities which fully sustain the proposition submitted. If there was a risk incident to the use of the entry, not caused by its condition, but the result of other agencies, whether those agencies were under the control of the master or not, an injury resulting to an employee therefrom would originate in and have to do with the employment. The Behnken Case, supra; Kirby Lumber Co. v. Scurlock (Tex. Sup.) 246 S. W. 76. In the Behnken and Scurlock Cases the injury was such a one as might have been reasonably contemplated would result from the use of the railway crossing in the one case and the tram road in the other. In order to proceed further in the case we have for consideration, it remains to be determined what may be the rule as to anticipated injury and

the result of its application to the facts of this case. In some of the authorities it is said that there must be a causal connection between the employment and the injury, and that only such injuries are compensable as are "in the light of experience the foreseen result of the employee's engaging in the employment." 28 R. C. L. 786; also pages 796–802. In the case of In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, injury was inflicted by the assault of a fellow workman who was in the habit of drinking, and who when intoxicated was quarrelsome and dangerous, which fact was known to the employer. Compensation was allowed on the ground that the injury was the natural result of the "employment of a peaceable workman in company with a choleric drunkard." In that case it is said that an injury—

"arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. * * * It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In the case of Re Reithel's, 222 Mass. 163, 109 N. E. 951, L. R. A. 1916A, 304, the superintendent of a woolen mill, upon ordering a trespasser to leave the premises, was shot and killed by such person, and compensation was allowed. In the opinion some stress is put on the fact that this particular trespasser had given trouble before, and "liability to whatever personal injury might be likely to arise in dealing with such a person was, therefore, within the contemplation of the employer and employee," and "became a risk of the employment." In this case it was said that the injury, "although unforeseen and the consequence of what on the record appears to have been a crime of the highest magnitude, yet now, after the event, appears to have had its origin in a hazard connected with the employment and to have flowed from that source as a rational consequence."

In the case of Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 Pac. 398, a section foreman was assaulted by a laborer whom he had discharged, and compensation was allowed on the conclusion that he "was hurt in an altercation which grew out of his justifiable efforts to maintain his authority as foreman and to protect the property of his employer intrusted to his care."

In the case of Atolia Mining Co. v. Industrial Commission, 175 Cal. 691, 167 Pac. 148, a miner returned to the mine after the close of the day's work to make some inspections in the line of his duty, and after coming out was shot without warning by one of the mine guards, and compensation was allowed. It was said in this case that—

"While unquestionably it was a heedless and reckless thing for the guards thus to have shot a man, * * * yet every legal presumption favoring innocence, the argument will not be sustained that these guards deliberately perpetrated an assault to commit murder. To the contrary, it will be held that the man who fired the shot * * * believed that the circumstances justified him in so doing, and that thus he was acting within the line of his own employment, and under this view, Mason [the injured employee], having been injured by the negligent performance of an act within the general scope of the duties of the employee inflicting the injury, is entitled to his recovery."

In this connection it is pertinent to say that disobedience and negligence in the performance of their duties by coemployees are to be anticipated, and are "as much one of the risks of a man's employment as a defect in the mechanical appliances." Honnold, § 120. In the case of the Georgia Casualty Insurance Co. v. McClure (Tex. Civ. App.) 239 S. W. 644, compensation was awarded for injuries sustained by an employee in a fight with another employee, the fight growing out of a quarrel about the work. A writ of error was granted in the case, and, as this prevents the decision from having authoritative weight, we do not discuss it further. The Court of Civil Appeals in the Behnken Case, (Tex. Civ. App.) 226 S. W. 154, drew a distinction between the term "injury arising out of and in the course of employment" and that used in our statute, to wit, "having to do with and originating in the work of the employment," holding that under our statute there need be no direct causal connection between the employment and the injury. However, the Supreme Court, in disposing of the case, did not place the decision on such grounds.

[1] Without attempting to state any test for general application, we think the authorities discussed sustain at least this conclusion: That, since Salisbury was at the time of the shooting acting in the performance of the duties of his employment, then the injury inflicted by him would be compensable, notwithstanding he acted in a reckless manner, and notwithstanding the fact that the employees themselves may have acted negligently in failing to give the signals Salisbury had informed them they should give on entering the premises. We therefore hold that the evidence is sufficient to sustain the finding that the injury had to do with and originated in the work.

As to the other requirement, that the injury be sustained by the employee "while engaged in or about the furtherance of the affairs or business of his employer," we cite

the cases of Kirby Lumber Co. v. Scurlock (Tex. Sup.) 246 S. W. 76, Western Indemnity Co. v. Leonard (Tex. Com. App.) 248 S. W. 655, Behnken Case, supra, and Employers' Indemnity Corporation .v. Kirkpatrick (Tex. Civ. App.) 214 S. W. 956, as being conclusive against appellant's position on this phase of the case.

[2, 3] The court submitted a special issue inquiring as to whether Gill's injury was sustained in the course of his employment, and in connection therewith gave a definition of the term "injury sustained in course of employment." This definition is not in the language of the statute, and one proposition presented by appellant complains of error in such definition. We do not approve the practice of the court in varying the statutory definition, but are of the opinion that the definition given in this case was substantially the same as that of the statute, and overrule this proposition. The court, in the same connection, expressly charged the jury in the language of the statute that the term "injury sustained in the course of employment" did not include an injury "caused by the act of a third person," etc. And hence we think there was no error in refusing to submit an issue as to whether Salisbury shot plaintiff because of reasons. personal to himself, etc.

[4] The judgment, allowing $374 for payment of plaintiff's doctor's bills for the first two weeks of the injury, is not sustained by the evidence. The physician who was employed testified that his charges for services during the first two weeks was about $275, which amount was a reasonable charge. When he came to giving the items of the charges, the aggregate thereof was $262. The judgment will be affirmed on condition of remittitur within 15 days of the sum of $112; otherwise it will be reversed. The appellee's offer to remit comes too late to entitle him to recover costs of appeal. A., T. & S. F. Ry. Co. v. Boyce (Tex. Civ. App.) 171 S. W. 1096 (2), and authorities there cited.

We think the award of $280 for hospital fees is sustained by the evidence.