## STANDARD ACC. INS. CO. v. STANALAND.
### (No. 8822.)

(Court of Civil Appeals of Texas. Galveston. May 4, 1926. Rehearing Denied May 27, 1926.)

1. **Master and servant** ⬅373—**Employee, accidentally shot by foreman while waiting outside tent where he was required to go to receive pay held to have been injured in "course of employment" (Complete Tex. St. 1920, art. 5246—82).**

Employee of construction company, who, while waiting outside tent where he was required to go to receive advance payment on labor which foreman had agreed to advance, was rendered blind when accidentally struck in head by bullet from pistol fired by foreman, held to have sustained injury in course of employment, within Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82, where company's agents could by exercise of reasonable diligence have known of foreman's habitual and reckless shooting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

2. **Master and servant** ⬅348.

Workmen's Compensation Law should be liberally construed in favor of injured employee.

3. **Master and servant** ⬅373 — **Injury by "horseplay" is compensable where workman is victim of another's prank.**

Workman, injured as result of "horseplay," is entitled to compensation, where he is victim of another's prank, to which he is not party, and employer has permitted such pranks to be often played at place of work prior to injury.

**4. Master and servant ⬤⇒391¼, New, vol. 10A Key-No. Series—Allowance of interest on compensation from date of injury to date of judgment held error, where not authorized by pleadings.**

Allowance to injured workman, in addition to sum allowable under law as full compensation, of interest on such sum from date of injury to date of judgment, *held* error, where it was not authorized by pleadings.

Appeal from District Court, Fort Bend County; M. S. Munson, Judge.

Suit by the Standard Accident Insurance Company against Raymond Stanaland to set aside an award under the Workmen's Compensation Law. Judgment for defendant, and plaintiff appeals. Reformed and affirmed.

Cole, Cole & O'Connor and William L. Kemper, all of Houston, for appellant.

J. D. Pickett, of Palestine, for appellee.

LANE, J. The Hubbard-Miller Construction Company, engaged in the business of construction work, hereinafter called Construction Company, was a subscriber under the Employers' Liability Act, commonly known as the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and carried insurance with the Standard Accident Insurance Company, hereinafter, for convenience, called the Insurance Company.

On the 12th day of April, 1924, the Construction Company was engaged in the construction of a bridge across a creek at Sugarland, Ft. Bend county, Tex. During this construction work it maintained a group of five tents about 400 yards from the bridge, one of which was used by one S. P. Johnson, who was foreman in charge of the work of the Construction Company, in part as an office, where he kept his books and pay-rolls and there paid the employees of the company for their labors; the other four tents were for use of the employees as sleeping quarters if they so chose to use them, free of charge. While the tents were so used, the foreman, S. P. Johnson, and the several occupants thereof, or some of them, habitually engaged in the reckless shooting of pistols and other firearms for sport in and around said group of tents and in close proximity to the tent occupied by the foreman, Johnson, as his office, and where the employees of the Construction Company were required to go to collect their wages. Such conduct on the part of said parties had continued for some time prior to April 12, 1924.

Raymond Stanaland, on the 12th day of April, 1924, was in the employ of the Construction Company and was assisting in the construction of the bridge above mentioned. At noon on said 12th day of April, the same being Saturday, the employees, including Stanaland, had ceased work for the week, and Stanaland, whose wages were not due, but who desired to procure an advance on labor performed by him so that he might go to Houston, made arrangements with Johnson to advance him some money on his work. To get this advance payment he was required to go to the office tent of the foreman, Johnson. After Stanaland approached said tent, and while standing in front of same for 15 or 20 minutes talking to other employees, he was accidentally struck in the head by a bullet fired from a pistol by the foreman, Johnson, while standing in the office tent, and rendered totally blind.

J. D. Pickett, an attorney employed by Stanaland, presented his claim for compensation to the State Industrial Accident Board, which board made and entered an award in favor of the claimant. Thereafter the Insurance Company in manner and form as required by law instituted this suit in the district court of Ft. Bend county to set aside the award of the Accident Board. A jury was waived, and upon trial before the court judgment was rendered in favor of Stanaland against the Insurance Company for the sum of $6,379.44, together with 6 per cent. interest thereon from the 12th day of April, 1924, to date of judgment. The Insurance Company has appealed.

Appellant contends for a reversal of the judgment upon the grounds that it was shown by the undisputed evidence: (1) That the injury received by appellee for which he sues was not one having to do with and originating in the work or business of his employer; and (2) that at the time such injury was received appellee was not engaged in the furtherance of the affairs or business of his employer; and that such injury was not sustained in the course of appellee's employment.

Appellee contends that at the time he sustained said injury he was engaged in the furtherance of the affairs of his employer, because he was at the office of his employer by prearrangement with his employer's foreman to collect the wages that were due him, on a pay day, in the usual course of the employment; that the injury was connected with and originated in the work of the employer, because it was the logical result of the employer's negligence in employing a foreman addicted to the use of intoxicating liquor, because such result was to be expected where appellee worked under a foreman in the habit of carrying a pistol and other firearms on and about his person and accustomed to the reckless shooting of said pistol both in the office where the employer's business was transacted and in the other structures which the crew used as sleeping and living quarters, because such result would reasonably follow the act of the employer in retaining in his employment a crew of men addicted to the use of intoxicating liquors and also accus-

tomed to the reckless shooting of firearms about the office and living quarters—in short, that such injury was the natural result of the conditions under which the appellee was required to work.

By article 5246—82 of the Revised Civil Statutes of 1920 (Complete Tex. St., or Vernon's Ann. Civ. St. Supp. 1918), same being a section of our Workmen's Compensation Law, it is provided that the term "injury sustained in the course of employment," as used in the act, shall not include:

"1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by the act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

[1] There is no material controversy as to the facts proven. It was shown that Stanaland had gone to the group of tents and to the office tent of the foreman of his employer, where and by whom employees were to be paid their wages, to get an advance payment on his labor, which the foreman had agreed to advance to him. He was at the place of injury, so far as shown, solely because he was an employee of the Construction Company. In going to the tent, where he was required to go to collect his wages, he was compelled to expose himself to the dangers incident to the habitual and reckless shooting of firearms by the occupants of the tents, including the foreman of his employer. Not only did S. P. Johnson, the foreman of the Construction Company, know of such habitual and reckless shooting and the dangers incident thereto, but the Construction Company's agents other than its foreman Johnson, who was in charge of the camp, could, by the exercise of reasonable diligence, have ascertained such existing dangerous conditions which surrounded its employees who were required to go to said tent in the course of their employment.

In Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S. W. 72, Judge Greenwood, speaking for our Supreme Court, said:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is neces-sarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business."

We may add to what was said by Judge Greenwood that injuries suffered by employees by reason of hazardous conditions permitted to exist by the employer in and about the place where the employee is required to go to get his wages are injuries which arise out of the employment. Stanaland was at the office tent to collect his wages solely because he was an employee, and he could not make such collection without going to said tent.

Speaking further in the Behnken Case, Judge Greenwood said:

"Was Behnken engaged in or about the furtherance of the affairs or business of his employer when he received the injury causing his death? He was upon the crossing provided as the means of access to his work solely because he was an employee. He encountered the dangers incident to use of the crossing in order that he might perform the duties imposed by his contract of service. Without subjecting himself to such dangers he could not do what was required of him in the conduct of the lumber company's business. He had reached a place provided and used only as an adjunct to that business, and was injured from a risk created by the conditions under which the business was carried on. To hold that he was not acting in furtherance of the affairs or business of the lumber company would be to give a strict interpretation to this remedial statute, which should be liberally construed with a view to accomplish its purpose and to promote justice."

We think that it is uniformly held by our courts upon facts similar to those of the present case that the injury suffered under such facts was received in the course of and arose out of the employment and is governed by the Workmen's Compensation Law, unless excepted from the operation to such law for another or other reasons, such as not being incident to such employment. Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76; Texas Emp. Ins. Ass'n v. Gill (Tex. Civ. App.) 252 S. W. 850; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72; Id. (Tex. Civ. App.) 226 S. W. 154; Pekin Cooperage Co. v. Ind. Board of Illinois, 277 Ill. 53, 115 N. E. 128.

Following the rule established by the authorities cited, we think it may fairly be said, under the facts in the present case, that the accident resulting in the injury to appellee, Stanaland, arose out of, and in the course of, his employment.

We are now brought to a consideration of the contention of appellant that the injury of appellee Stanaland was received in what is known as a mere horseplay, though not engaged in by him, and that the act resulting in his injury was not one having to do with and originating in the work or business of his employer, and therefore he could not re-

cover under the provisions of the Workmen's Compensation Law.

We have, after a careful examination of the numerous authorities cited in the able briefs of both parties, not, however, without great difficulty, reached the conclusion that the contention of appellant should be overruled. While the authorities cited by counsel for parties relative to the question here involved are in irreconcilable conflict, we think those cited by counsel for appellee should be followed by us in the present case.

[2] As we have already said, appellee was at the foreman's tent provided by his employer as a pay station, so far as shown, solely because he was an employee of the Construction Company. He encountered the dangers incident to the place where he was required to go to receive his wages. He had, at the time of his injury, reached the place provided for the transaction of his employer's business and was injured from a risk created by the conditions under which such business was carried on. To hold that the injury received by appellee was not one having to do with and originating in the work or business of his employer would be to give a strict interpretation to the Workmen's Compensation Law, a remedial statute which should be liberally construed with a view to accomplish its purpose and to promote justice. Lumber Co. v. Behnken, 112 Tex. 103, 246 S. W. 72.

According to the rule as established by the weight of authority, if an employer knows, or ought to know, that conditions surrounding the place where his employees are required to perform their duties may result in injury to such employees, or that an instrumentality of his may cause such injury, or that one of his employees, because of his dangerous disposition, is likely to cause injury to a fellow employee and injury results in consequence of the conditions or of the character or habits of such employee, the injury is a risk arising out of the conditions in the employment as carried on, and hence arises out of the employment. Marchiatello v. Lynch Realty Co., 94 Conn. 260, 108 A. 799, and authorities there cited; Employers' Ins. Ass'n v. Gill (Tex. Civ. App.) 252 S. W. 850; Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522; State ex rel. Johnson Sash & Door Co. v. District Court, etc., 140 Minn. 75, 167 N. W. 283, L. R. A. 1918E, 502; Stuart v. Kansas City, 102 Kan. 307, 563, 171 P. 915; Pekin Cooperage Co. v. Industrial Board of Illinois, 277 Ill. 53, 115 N. E. 128; Socha v. Cudahy Packing Co., 105 Neb. 691, 181 N. W. 706, 13 A. L. R. 513; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306; In re Loper, 64 Ind. App. 571, 116 N. E. 324; Stark v. State Ind. Accident Com., 103 Or. 80, 204 P. 151.

The facts in the case of Kirby Lumber Co. v. Scurlock are that Scurlock was a sawmill worker for the lumber company. He lived two miles from the mill, where he worked.

285 S.W.—56

The lumber company owned a tramroad leading from the mill to a point near where Scurlock lived. Scurlock used a velocipede to go to and from his work, and in doing so usually used the tramroad as a way of travel. On the day of his injury the mill did not run, and Scurlock occupied the forenoon of the day in working around the machinery of the mill. He quit work at 12 o'clock and started home on his velocipede via the tramroad. While on his way home a train of the lumber company ran over and killed him. His wife brought common-law suit for damages. The lumber company defended on the ground that Scurlock received his death in the course of his employment, and therefore the case came under the compensation statute and Mrs. Scurlock could not recover under suit as brought. In deciding the case, our Supreme Court, speaking through Justice Greenwood, said:

"We do not regard it as a matter of moment in arriving at a correct decision whether the employer had expressly obligated itself to furnish Scurlock the tramroad as a means of access to, and of exit from, the sawmill, or whether Scurlock held a mere implied revocable license to use the tramroad, granted by the employer to facilitate its business. In either event, Scurlock had the right or privilege to use the tramroad. In either event, his right or privilege was derived solely from his contract of employment. In either event, his right or privilege was an incident of his employment. In either event, in making use of the tramroad, Scurlock was performing a duty of his employment. In either event, his use of the premises facilitated his employer's business in making surer his prompt attention to so much of the employer's work as he was obligated to perform."

We here quote from other cases cited, as follows:

Texas Employer's Insurance Association v. Gill:

"If there was a risk incident to the use of the entry, not caused by its condition, but the result of other agencies, whether those agencies were under the control of the master or not, an injury resulting to an employee therefrom would originate in and have to do with the employment. The Behnken Case, supra; Kirby Lumber Co. v. Scurlock (Tex. Sup.) [112 Tex. 115] 246 S. W. 76."

Marchiatello v. Lynch Realty Co.:

"The reservation presents a single question, based upon the finding of the commissioner—whether the injury to Marchiatello arose out of his employment. An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or the conditions under which it is carried on."

Again:

"If an employer knows, or ought to know that an instrumentality of his business may cause injury to his employees, or that one of his employees is likely to cause injury to a fellow employee, and injury results in consequence of the condition of the instrumentality or of the character or habits of the employee, the injury is a risk arising out of the conditions in which the employment is carried on, and hence arises out of the employment. The cases immediately in point are not · numerous. An injury to an employee by a fellow employee when drunk, and known by the employer to be liable to get in this condition, and at such times to be dangerous, was held to arise out of the employment."

Leonbruno v. Champlain Silk Mills:

"The test of liability under the statute [Workmen's Compensation Statute] is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk."

Johnson Sash & Door Co. v. District Court, 141 Minn. 75, 167 N. W. 283, L. R. A. 1915E, 502:

"The rule is well enough settled that where workmen step aside from their employment and engage in horseplay or practical joking, or so engage while continuing their work, and accidental injury results, and in general where one in sport or mischief does some act resulting in injury to a fellow worker, the injury is not one arising out of the employment within the meaning of compensation acts. * * *

"Here we conceive the situation to be different. Filas was exposed by his employment to the risk of injury from the throwing of sash pins in sport and mischief. He did not himself engage in the sport. His employer did not stop it. The risk continued. The accident was the natural result of the missile throwing proclivities of some of Filas' fellow workers and was a risk of the work as it was conducted. In McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, injuries resulting from blows administered in frenzy by an intoxicated fellow worker known by the employer to be in the habit of becoming intoxicated and in that condition to be dangerous, were held to arise out of the employment. Liability was rested 'upon the causal connection between the injury of the deceased and the conditions under which the defendant required him to work.'"

In re Loper, 64 Ind. App. 571, 116 N. E. 324:

"Although, in the foregoing case, the horseplay cases are apparently distinguished by a general reference, we fail to see the distinction under the facts of the case at bar. We are not dealing here with a sporadic, occasional, or unanticipated use of the air hose in play. It had become a habit here for the employees to turn the hose against one another. * * *

"The employer, with knowledge of the facts, permitted such practice to continue. It was within his power to have prohibited it. By failing to do so, it became an element of the conditions under which the employee was required to work. The employee here while pursuing his labors became the victim of such custom resulting in the loss of his life. * * *

"In order that an injury may be held to arise out of the employment, * * * 'it need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that· source as a rational consequence.'"

Stuart v. Kansas City, 102 Kan. 307, 563, 171 P. 913 (after citing several authorities):

"Under these authorities the rule is that where a workman, known by his master to be in the habit of indulging in dangerous play with his fellow workmen, is retained in the master's employ, the danger of injury from such play becomes an incident of the employment of the other workmen, and injury to any of the other workmen, while performing his regular work, caused by such play, comes within the provisions of the Workmen's Compensation Act."

[3] The rule established by the numerous authorities relied upon by appellee and adopted by us relative to injuries as results of "horseplay" is, that if a workman is an active participant in what is denominated "horseplay," he is not entitled to compensation, but if, while going about his duties, he is a victim of another's prank, to which he is not a party, he should receive compensation if prior to such injury the employer had permitted such pranks to be often played at the place of work.

The decisions cited by us, allowing compensation under the Workmen's Compensation Law, rest upon the causal connection between the injury of the person injured and the conditions under which he was required to work.

As we have already stated, there are cases which announce a rule contrary to that announced by the cases cited and relied upon by us in support of our holding in this case, but to follow them would be to violate the rule requiring a liberal construction of the Workmen's Compensation Law, which should be liberally construed in favor of the injured employee.

[4] Appellant also complains of the action of the court in allowing appellee a recovery, in addition to the sum allowable under the law as full compensation, interest on such sum from the date of the injury to date of judgment, upon the grounds that there was neither pleading nor prayer authorizing such recovery of interest. We think such complaint should be sustained. Appellee sued only for the sum allowable by the Compensation Law. He made no plea for interest. The court rendered judgment for the full sum sued for, and, in addition thereto, awarded to the plaintiff $365.76 as interest on such sum from the date of the injury to date of judgment. In this the court erred. In suits for injuries, interest is not recoverable eo

nomine; it is an element of damages, to be included as such by the plaintiff in his claim by the jury in their verdict; recovery for the full amount claimed cannot be increased by allowing interest thereon from the date of the injury, because not authorized by the pleadings. San Antonio & A. P. Ry. Co. v. Addison, 96 Tex. 61, 70 S. W. 200; Consolidated Underwriters v. Saxon et al. (Tex. Com. App.) 265 S. W. 143; City of San Antonio v. Pfeiffer (Tex. Civ. App.) 216 S. W. 210; West Lumber Co. v. Henderson (Tex. Com. App.) 252 S. W. 1044; Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151, 153; Fort Worth & Rio Grande Ry. Co. v. Mathews, 108 Tex. 228, 191 S. W. 559; Pecos Ry. Co. v. Rayzor, 106 Tex. 544, 172 S. W. 1103.

Having reached the conclusions above expressed, the judgment is reformed so as to eliminate therefrom the sum of $368.76 allowed by the court as interest, and, as so reformed, it is affirmed.

Reformed and affirmed.