JAMES PIERCE, APPELLEE, v. BOYER-VAN KURAN LUMBER & COAL COMPANY, APPELLANT.

FILED FEBRUARY 5, 1916. No. 19447.

1. Master and Servant: INJURY TO SERVANT: RIGHT TO COMPENSATION. An employee is not entitled to compensation for injury under the employers' liability act unless the accident which caused the injury happened in the course of his employment, and arose out of his employment. Rev. St. 1913, sec. 3650.

2. ———: ———: ———. An accident resulting from a risk reasonably incident to the employment should be considered as arising out of the employment.

3. ———: ———: ———: ASSAULT. If an employee is assaulted by a fellow workman, whether in anger or in play, an injury so sustained does not arise "out of the employment," and the employee is not entitled to compensation therefor under the employer's liability act.

4. ———: ———: COMPENSATION. The employers' liability act allows the parties interested to "settle all matters of compensation between themselves." Rev. St. 1913, sec. 3677. The amount of compensation, when not agreed upon by the parties, is to be determined by the district court (section 3680) and, except as expressly provided in the act, must be payable periodically (section 3666).

5. ———: ———: COMMUTATION OF COMPENSATION. When the amount of compensation in periodical payments has been determined, either by agreement of the parties, or by the decision of the court, it "may be commuted to one or more lump sum payments, except

99 Neb. 21

compensation due for death and permanent disability." Rev. St. 1913, sec. 3681.

6. ——: ——: ——: CONSENT OF COURT. In such case no other or different authority for making such commutation is provided by that section. It still depends upon the agreement of the parties, except that their right to so agree in the specified cases depends upon "the consent of the district court."

7. ——: ——: ——: ——. In general, the agreement of the parties will authorize such commutation of payments. In case of death or permanent disability, the consent of the court is also necessary. If the district court upon careful investigation finds that special circumstances exist making it necessary to commute to a lump sum for the protection of the workman or his dependents, the court may "consent" to such agreement by the parties.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*Mahoney & Kennedy,* for appellant.

*Dunham & Aye, contra.*

SEDGWICK, J.

While the plaintiff was in the employ of the defendant, another employee of the defendant threw a small stick, which struck the plaintiff in the eye. The plaintiff brought this action in the district court for Douglas county to recover compensation under the employers' liability act. The trial court found in plaintiff's favor, and defendant has appealed.

The defendant presents two questions for consideration, and contends: First, that the findings of the court that the accident arose out of plaintiff's employment is not supported by the evidence; second, that the court erred in finding that the plaintiff is entitled to have his weekly compensation payments commuted to one lump sum payment, and the court erred in entering judgment for the plaintiff for a lump sum. These are important questions under this statute. Section 3650, Rev. St. 1913, provides: "If both employer and employee become subject to part II of this article, both shall be bound by the schedule of compensation herein provided, which compensation shall be

paid in every case of injury or death caused by accident arising out of and in the course of employment, except accidents caused by, or resulting in any degree from wilful negligence, as hereinafter defined, of the employee." It is clear that the meaning is that the employee shall not be entitled to compensation under the act unless the accident which caused his injury happened in the course of his employment. The facts conceded by the parties are that the plaintiff was regularly in the employment of the defendant. He was acting as a teamster, and at the time of the accident complained of was returning with his team and wagon to the yards of the defendant, and as he was entering the yards another employee, Brown, jumped into the wagon and began a playful scuffling with the plaintiff. Brown soon left the wagon, and, after running a short distance, picked up a small stick, which he playfully threw at the plaintiff, and which struck the plaintiff in the eye, causing the loss of his eye. The contention is that the plaintiff scuffled with Brown while he was upon the wagon, and that after Brown left the wagon the plaintiff attempted to strike him with one of the lines. This latter contention is alleged in the answer, as follows: "Such injury as the plaintiff has was received through a playful assault or friendly scuffle which plaintiff provoked and brought upon himself by attempting to strike said Guy Brown with the end of one of the lines with which the plaintiff was driving his team, and the action of said Guy Brown in throwing the stick which injured the plaintiff was incited and caused by plaintiff's own action." The plaintiff in his testimony denied that he engaged voluntarily in any scuffle with Brown, and denied that he struck Brown with the line or made any attempt or motion toward doing so. Brown testified to something of a scuffle upon the wagon, and also testified positively that the plaintiff attempted to strike him with the line after he left the wagon, which was the cause of his throwing the stick. There was some other evidence upon these two points, but it may be said to be substantially conflicting.

"The accident must 'arise out of' the employment, as well as 'in the course of' the employment. Thus, where a workman during the course of the employment does something entirely foreign to the work which he is employed to do (playing a practical joke, for example) whereby he is injured, this accident could be said to have occurred 'during the course of' the employment, but it could not be said to 'arise out of' the employment, because the workman was not doing anything which he was employed to do when the accident happened." 1 Bradbury, Workmen's Compensation, p. 398.

The parties cite other authorities in the briefs establishing this rule. In this case clearly the plaintiff was not doing "something entirely foreign to the work which he is employed to do." He did not leave his wagon; the team was not stopped; he continued his regular employment. If he resisted the advances of Brown and attempted to force him from the wagon, there is no evidence whatever that plaintiff did anything to encourage Brown to continue his performances. There is no doubt, under the many authorities cited by both parties, that if the workman abandons his employment, even for a short time, and engages in play, or some occupation entirely foreign to his employment, he is not entitled to compensation for an accident by which he is injured while so doing. It would seem also to be clear that, even if he does not abandon his employment, and even while engaged in the performance of his duty, if he does some act or thing not connected with his employment, which was intended to and probably did provoke an assault or retaliation, he would not be entitled to compensation for an injury the result of an accident so caused by himself. It is difficult to determine from this evidence whether the plaintiff made any motion at or toward striking Brown with his lines, and if he did it was in direct connection with Brown's interference with him, and may reasonably be said to be a part of that transaction.

There is evidence in the record that the defendant's employees were accustomed to join in what they called

horse-play, and that the defendant took no precautions to stop such a custom or protect his employees. There is also evidence that this plaintiff was not in the habit of joining in such playful performances. Under such circumstances the supreme court of New Jersey said: "Where the accident is the result of a risk reasonably incident to the employment, it is an accident arising out of the employment (citing cases). The trial judge found, as a fact, that the decedent did nothing to invite the attack, and it is not denied that the decedent was acting, at the time, within the scope of his employment. * * * In the case under consideration, it appears that the prosecutor employed young men and boys. It is but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age, or even of maturer years, to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman is a matter of common knowledge to every one who employs labor. At any rate, it cannot be said that the attack made upon the decedent was so disconnected from the decedent's employment as to take it out of the class of risks reasonably incident to the employment of labor." *Hulley v. Moosbrugger*, 87 N. J. Law, 103.

Such rule would perhaps not be unjust in its general application. The question is whether our statute can be so construed. The language of the statute is identical with the earlier statute of England, which was adopted also by some of our states. It had been many times construed by the English courts before it was adopted by our legislature. Under such circumstances, the courts always consider that, if the legislature was not satisfied with the construction which had been given to language adopted from another jurisdiction, the language adopted would have been so guarded in the statute adopting it as to make the intention of the legislature clear. In other words, as it is generally stated, when a statute of another jurisdiction is adopted, its known construction and meaning in the jurisdiction of its origin is adopted also, unless a contrary intention is

expressed by the legislature adopting it.  The case of *Hulley v. Moosbrugger*, upon appeal to the court of errors and appeals (95 Atl. (N. J.) 1007), was reversed, and the law stated to be: "An employer is not charged with the duty to see that none of his employees assaults any other one of them, either wilfully or sportively.  An employer is not liable, under the workmen's compensation act (P. L. 1911, p. 134), to make compensation for injury to an employee which was the result of horse-play or skylarking, so called, whether the injured or deceased party instigated the occurrence or took no part in it; for, while an accident, happening in such circumstances, may arise in the course of, it cannot be said to arise out of, the employment."  The court cited and quoted from many decisions of the English courts which had so construed the statute long before our legislature adopted it, and we must conclude that our legislature intended that it should be so construed.

Did the court err in entering judgment for the plaintiff in a "lump sum"?  The following sections of the Revised Statutes of 1913 appear to bear upon this question:

"Except as hereinafter provided, all amounts of compensation payable under the provisions of this article shall be payable periodically in accordance with the methods of payment of the wages of the employee at the time of his injury or death."  Section 3666.

"The interested parties shall have the right to settle all matters of compensation between themselves in accordance with the provisions of this article."  Section 3677.

"The amounts of compensation payable periodically under the law, either by agreement of the parties, or by decision of the court, may be commuted to one or more lump sum payments, except compensation due for death and permanent disability.  These may be commuted only with the consent of the district court."  Section 3681.

This court had occasion to consider one phase of this question in the recent case of *Bailey v. United States Fidelity & Guaranty Co., ante,* p. 109.  In that case the employer and the workman had agreed upon such commutation and

the trial court rendered judgment in a lump sum. The question was whether the court had power to do so without the consent of the insurance company, which was also a party to the suit and was objecting to such commutation. This court sustained the trial court in so holding. It may no doubt sometimes happen that the workman, or his dependents, will be placed at a disadvantage by the refusal of the employer to agree to commutation in a lump sum. He may be compelled to receive a much less amount than he is entitled to because of his necessity to have the same paid in a lump sum. In the recent case above cited, the court construed the statute and held that the statute implies "that a previous agreement must have been reached which will be ratified by the district court, and that without such an agreement the court cannot compel such a commutation of payments. * * * We do not feel at liberty to transpose the language of this section, as plaintiff desires, and change its meaning so as to make commutation compulsory. The meaning is not ambiguous. The fact that the legislature did not express such a thought, while many such statutes do, is significant." The law provides that "interested parties shall have the right to settle all matters of compensation between themselves." Section 3677. Section 3681, which provides that periodical payments may be commuted, is in harmony with this provision. It does not provide that the district court may order commutation at the request of one of the parties, but does provide that the parties themselves cannot agree upon a commutation in certain cases without the consent of the court. If there is doubt in regard to the justice of this provision, there seems to be nothing in the language of the statute that would justify the court in construing it differently, and the remedy, if one is needed, must be by the legislature. It does not appear that the parties had agreed upon commutation, and the court has no authority to order it without such agreement.

The judgment of the district court is reversed and the cause remanded.

REVERSED.