## IN RE LOPER.

[No. 9,947.    Filed June 1, 1917.]

1. MASTER AND SERVANT. — *Workmen's Compensation Act.*— *Scope.*—*Accident Arising Out of Employment.*—Where factory employes, while in the performance of their duties, had formed the habit of using an air compressor in acts of sport by turning the air upon one another with the knowledge of the employer, who made no objection, and an employe, while engaged in his duties, was injured by having the air from the compressor turned upon him, as an act of sport by the employer's assistant superintendent, the injury was one arising out of the course of the employment within the meaning of the Workmen's Compensation Act, Acts 1915 p. 392.    pp. 572, 573, 576, 579.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.*— *Scope.*—*Accident Arising Out of Employment.*—It is only for injury or death arising out of and in the course of the employment that is included within, and may be compensated for, the Workmen's Compensation Act, Acts 1915 p. 392.    p. 573.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Right to Compensation.*—To entitle an injured workman to compensation under the Workmen's Compensation Act, Acts 1915 p. 392, the existence of a duty and its breach resulting in injury to the workman, is not necessary, the test of the right to compensation being whether the injury resulted from some peril incident to the employment and whether the cause of the injury, although not foreseen, may reasonably be deduced from the circumstances peculiar to the place and under which the workman was required to perform his labors.    p. 576.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Construction.*—Workmen's compensation acts are construed liberally in favor of the employe.    p. 579.

From the Industrial Board of Indiana.

Certified Question of Law.

Proceedings under the Workmen's Compensation Act in the matter of one Loper.    Question of law certified by the Industrial Board.    *Question answered.*

*H. C. Austill* and *Horace F. Harvey,* for employer.

CALDWELL, J.—The Industrial Board pursuant to §61 of the Workmen's Compensation Act (Acts 1915 p.

392), has certified to this court for determination a question of law based on a statement of the facts presented by a certain proceeding pending before it. The statement of facts as formulated by the board, and wherein the deceased employe is designated as A and the employer as B, is as follows:

"That on the 28th day of September, 1916, A was in the employment of B as a drill press operator, at an average weekly wage of $14.30; that on said date, while he was engaged in his work as a drill press operator, the assistant superintendent of the employer, under whom A was working, as an act of sport and horseplay upon the part of said assistant superintendent, turned the air from the air compressor, maintained at said time in the employer's factory, upon the employe in the region of the rectum; that the turning of said air upon the employe at said time caused him to quickly jerk and straighten his body; that at said time the employe was suffering from an abscess in the region of the gall bladder; that the turning of said air upon him as aforesaid by the employer's assistant superintendent, causing him to suddenly jerk and strain himself, ruptured said abscess and resulted in acute general peritonitis, which caused the death of said employe on the 30th day of September, 1916; that the employer, by and through its assistant superintendent, had actual knowledge of the injury of the employe at the time that it occurred; that the air compressor in the employer's factory was used for the purpose of cleaning machinery, and long prior to the 28th day of September, 1916, the employes had established the custom of using the same to 'brush' their clothes, by which is meant that it was used to blow the dust and dirt off their clothing; that said employes had also formed the habit of using said compressor in acts of sport or horseplay by turning the air therefrom upon one another, which act was known among them-

selves as 'goosing;' that the deceased employe had fre-
quently participated in such sport; that such conduct of
the employes was carried on with the actual knowledge
and acquiescence of the employer by and through its
assistant superintendent; that said assistant superin-
tendent in fact actually participated therein and no ob-
jection whatever was ever made by him or any other
representative of the employer to such conduct on the
part of the employes; that at the time said air was
turned upon the deceased employe, he was not partici-
pating to any extent in the sport or horseplay of the
employer's assistant superintendent but at said time
was actually performing his work; that the deceased
employe left surviving him his widow and two sons,
aged respectively twelve and eight years, with whom he
was living at the time of his injury and who were
wholly dependent upon him."

The certified question of law is as follows: "Upon
the foregoing facts, did the injury and death of the
employe arise out of his employment within the mean-
ing of the Indiana Workmen's Compensation Act?"

Only an injury or death "by accident arising out
of and in the course of the employment" is included
within the provisions of, and may be compen-
2. sated for, under our act. §2, *supra*. Practi-
cally all the American workmen's compensation
statutes limit compensation to cases of injury or death
"arising out of and in the course of the employment".
The English Compensation Act contains a like limita-
tion. *Union Sanitary Mfg. Co.* v. *Davis* (1917), 64
Ind. App. 227, 115 N. E. 676.

The books contain many cases involving injuries to
workmen caused or occasioned by some sportive act of
a fellow workman done by him independent of or
1. disconnected from the performance of any duty
of his employment, and characterized by the

courts and law writers as "practical joking," "skylarking," or "horseplay". With practical uniformity the courts hold, both under the English act and also under the various American statutes, that an injury so suffered does not arise out of the employment within the meaning of the governing statute, and consequently that its compensatory provisions are not thereby invoked. See the following where the cases are grouped and discussed: Matter of *DeFilippis* v. *Falkenberg* (1915), 170 App. Div. 153, 155 N. Y. Supp. 761; *Federal Rubber Mfg. Co.* v. *Havolic* (1916), 162 Wis. 341, 156 N. W. 143, L. R. A. 1916D 968; *Hulley* v. *Moosbrugger* (1915), 88 N. J. Law 161, 95 Atl. 1007, L. R. A. 1916C 1203, reversing same case as reported in 87 N. J. Law 103, 93 Atl. 79; *Fishering* v. *Pillsbury* (1916), 172 Cal. 690, 158 Pac. 215; *Coronado Beach Co.* v. *Pillsbury* (1916), 172 Cal. 682, 158 Pac. 212, L. R. A. 1916F 1164; *Pierce* v. *Boyer-Van Kuran, etc., Co.* (1916), 99 Neb. 321, 156 N. W. 509, L. R. A. 1916D 970.

In denying compensation for an injury so caused, the courts, as a rule, assign as a reason that the sportive act that results in the injury constitutes no part of the duties of the frolicsome workman, and consequently no part of the enterprise conducted by the employer, and hence that the injury does not arise out of the employment. We proceed to determine whether such reasons for denying compensation are applicable to the facts here. Of the statement of facts submitted to us, and as we interpret it, there are certain elements which we regard as distinguishing and also controlling, as follows: The employes while engaged in performing the duties of their employment in and about the employer's plant, rather than when off duty, had formed the habit of using the air compressor in acts of sport by turning the current of air therefrom upon one another,

with the knowledge and acquiescence of the employer; the employer made no objection to such use of the compressor; on the particular occasion the injured employe was not participating in such sport, but was engaged in discharging the duties of his employment.

In the Pierce case, *supra*, a fellow employe assaulted Pierce in a playful manner. It is not clear that the latter was otherwise than passive in the transaction. Following the assault such fellow employe, in a spirit of fun, threw a small stick at Pierce, wounding his eye. There was evidence that defendant's employes had been accustomed to join in what they called horseplay, and that defendant did not interfere or take steps to protect the employes therefrom. Pierce was not in the habit of joining his fellows in such playful performances. The opinion discloses only inferentially that the employer had knowledge of such custom. In denying compensation the court quotes from the Hulley case as reported in 95 Atl. 1007, as follows: "The employer was not charged with the duty to see to it that none of his employes assaulted any other one of them, either wilfully or sportively. * * * An employer is not liable, under the Workmen's Compensation Act (P. L. 1911, p. 134), to make compensation for injury to an employe, which was the result of horseplay or skylarking, so called, whether the injured or deceased party instigated the occurrence or took no part in it; for while an accident, happening in such circumstances, may arise in the course of it, it cannot be said to arise out of the employment."

It may be true, as stated, that under ordinary circumstances, an employer is not chargeable with the duty of seeing that any one of his employes does not assault another; yet he does have the power of removing from his services objectionable employes, and also the power to regulate their manner of performing their

work, and their habits characterizing such perform-
ance.    If it should be granted that it is not the duty of
an employer to prohibit acts in which the workmen are
accustomed to engage while prosecuting their labors,
perilous to other employes, he at least has the power to
do so.    Moreover, there may be cases of assault by one
workman upon another which involve a breach of duty
upon the part of the employer as where he knowingly
retains in his employ a vicious workman.    The
3.    existence of a duty on the part of the employer
and its breach resulting in injury to a workman,
however, are not the tests by which the right to an
award under compensation acts is determined.    A duty
and its breach is negligence, but negligence on the part
of the employer is not essential in order that there may
be compensation under such acts.    The test of the right
to compensation under such acts, in so far as concerns
the element now under consideration, is whether the
injury resulted from some peril incident to the employ-
ment; whether the cause of the injury, although not
foreseen, may reasonably be deduced from the circum-
stances and surroundings peculiar to the place, and
under which the workman was required to perform his
labors, regardless of whether such perils or surround-
ings involve negligence on the part of the employer.

The facts in the De Filippis case, *supra,* were as fol-
lows:    A young girl employed in a factory, while in a
compartment of a toilet connected therewith,
1.    was struck on the arm by some small article,
whereupon she placed her eye near a crack in the
partition, which separated such compartment from an-
other, and looked through to discover where the article
came from.    A girl in such adjoining compartment,
moved by a spirit of fun, thrust a pair of scissors
through the crack and into the former girl's eye.    Com-
pensation was denied for the assigned reason that the

injury resulted from the sportive act of a coemploye, and thereby it did not arise out of the employment. The following is said in the course of the opinion: "Had an accidental injury resulted from the condition of the room, or of the toilet appliances, the injury might properly have been held to have arisen out of the employment. In fact, had there been a nail or a scissors blade imbedded in the wood and projecting from the side of the partition, which accidentally injured her eye as she turned to see what touched her, I think the injury would have been incidental to the use of the room for toilet purposes, and claimant entitled to an award." We take it that the court meant in the hypothetical case that compensation would have been allowable because the physical condition out of which the injury arose was an element of peril although not known to be such, in the situation wherein the injured employe was required to work, or in contact with which it was reasonably necessary that she come while discharging the duties of the employment and matters incident thereto. The court, in the De Filippis case, quotes from *McNicol's Case* (1913), 215 Mass. 497, 102 N. E. 687, L. R. A. 1916A 306, on the subject of when an injury may be said to arise out of the employment. That case is widely quoted. Among the things that are said are the following: An injury "'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

In *Federal Rubber Mfg. Co.* v. *Havolic, supra,* the injury was inflicted under circumstances very similar to those here. There, against the orders of the employer, the workmen were accustomed to dust their clothes by the use of a current of air from a compressed

air fixture. While Havolic was so using it, a coworkman took the hose from Havolic's hands, and in a spirit of sport turned the current against him. The air current entered his body through the anus and ruptured his intestines. Compensation was denied. The court suggests the question, but does not determine it, as it was not involved, whether the injured employe would have been entitled to an award had he injured himself while cleaning his clothes by the use of the air current, since the employer, through his foreman, knew that the air was being so used, although contrary to orders, and no steps were taken to prevent such use of it. We also express no opinion respecting the assumed case. The facts of that case and also in the assumed case differ from the facts here, in that here the injury was produced by a fellow workman in performing an act in harmony with an established custom. In matter of *Heitz* v. *Ruppert* (1916), 218 N. Y. 148, 112 N. E. 750, L. R. A. 1917A 344, it is held that where an altercation arose between two coworkmen respecting the manner of performing their work, resulting in one inflicting an injury on the other, the facts supported a finding that the injury arose out of the employment. *M'Intyre* v. *A. Rodger & Co.* (1903), 41 Scot. L. R. 107, is cited, wherein it is held that an injury resulting from a struggle between two workmen for the possession of a brush to be used in the work, arose out of the employment, Lord Trayner saying: "But they were both at work, McIntyre doing his work and Clark anxious to get at his work, and in the course of preparing himself for the continuance of his work." In *Knopp* v. *American Car, etc., Co.* (1914), 186 Ill. App. 605, Knopp as an employe was engaged in operating a trip hammer. A fellow workman standing by in a spirit of fun placed a tin can on the die against the face of which the trip hammer descended. Knopp re-

moved it. The fellow workman in a like spirit re-
placed it, Knopp again attempted to remove it, but the
hammer caught his hand and mashed it against the die.
Although the fellow workman was not at the time en-
gaged in performing the duties of his employment, com-
pensation was allowed for the assigned reason that it
was necessary that the can be removed in order that
Knopp might continue his work. In *State* v. *District
Court* (1916), 134 Minn. 16, 158 N. W. 713, L. R. A.
1916F 957, a bartender while engaged as such was
struck in the face by a drinking glass, thrown by a
patron. The bartender did not provoke the assault.
Held that the injury arose out of the employment, as
such an occurrence is a natural incident to operating
a saloon. We cite these cases, not that they are
entirely in point here, but rather as illustrative
of the spirit in which workmen's compensation
acts are interpreted. Being grounded in justice and
economically sound, courts construe them liberally in
favor of the employe. *Milwaukee* v. *Miller* (1913), 154
Wis. 652, 144 N. W. 188, L. R. A. 1916A 1, Ann. Cas.
1915B 847; *Wendt* v. *Industrial Ins. Commission*
(1914), 80 Wash. 111, 141 Pac. 311; *Coakley's Case*
(1913), 216 Mass. 71, 102 N. E. 930, Ann. Cas. 1915A
867.

The facts in *McNicol's Case, supra,* were as follows:
McNicol, while performing his duties as an employe,
was assaulted by McCarthy, a fellow workman,
causing injuries from which he died. McCarthy
was in the habit of drinking to intoxication, and
when intoxicated was quarrelsome and unsafe to be per-
mitted to work with his fellows, all of which was known
to the employer. He was in a drunken frenzy at the
time. It was held that the facts sustained a finding
that the injury arose out of the employment, the court
saying: "A natural result of the employment of a

peaceable workman in company with a choleric drunkard might have been found to be an attack by the latter upon his companion.   The case at bar is quite distinguishable from a stabbing by a drunken stranger, a felonious attack by a sober fellow workman, or even rough sport or horseplay by companions who might have been expected to be at work." The court proceeds to base the decision upon the "causal connection between the injury of the deceased and the conditions under which the defendant required him to work."

Although, in the foregoing case, the horseplay cases are apparently distinguished by a general reference, we fail to see the distinction under the facts of the case at bar.   We are not dealing here with a sporadic, occasional or unanticipated use of the air hose in play.   It had become a habit here for the employes to turn the hose against one another.   That the habit was a perilous one, see the following, where similar accidents occurred:   *Federal Rubber Mfg. Co.* v. *Havolic, supra; Galveston, etc., R. Co.* v. *Currie* (1906), 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367; *Ballard's Admx.* v. *Louisville, etc., R. Co.* (1908), 128 Ky. 826, 110 S. W. 296, 16 L. R. A. (N. S.) 1052.   The employer, with knowledge of the facts, permitted such practice to continue.   It was within his power to have prohibited it. By failing to do so, it became an element of the conditions under which the employe was required to work. The employe here, while pursuing his labors, became the victim of such custom resulting in the loss of his life. It would seem that it should have been anticipated that the natural result of the application of a current of air rushing under tremendous pressure from the nozzle of a hose against a human body, would be the loss of an eye, the destruction of an ear, or some such accident as here.   In order that an injury may be held to arise out of the employment, however, "it need not have been

foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *McNicol's Case, supra.*

To the question submitted to us, as we have interpreted it, we respond that under the facts the injury and death involved arose out of the employment within the meaning of the Workmen's Compensation Act. In so responding, certain facts control us, as that the use of the air here as indicated had become a habit, the emplòyer through his superintendent having knowledge thereof, and the injured workman at the time not participating therein, but being engaged in performing his duties.

NOTE.—Reported in 116 N. E. 324. Workmen's compensation: what is an injury or personal injury within meaning of acts, Ann. Cas. 1915C 921; meaning and effect of words "injuries arising out of and in course of the employment," L. R. A. 1916A 40, 232.