LINDA LOU LINCOLN ET AL. v. WHIRLPOOL CORPORATION.

[No. 771A129. Filed February 22, 1972. Rehearing denied April 6, 1972.]

---

3. Ibid.

*Gerald G. Fuchs, Robert L. Simpkins, Raymond P. Knoll,* of Evansville, for appellants.

*Gaylon L. Clark, McCray, Clark, Statham and McCray,* of Evansville, for appellee.

STATON, J.—This is an appeal from a negative award of the Full Industrial Board. Kenneth Wayne Lincoln was employed as a punch press operator on the 4:00 P.M. to the 12:30 A.M. shift at Whirlpool Corporation in Evansville, Indiana. He was shot and killed on June 19, 1969 at approximately 7:58 P.M. while waiting for the factory whistle to blow so that he could go to lunch.

Kenneth Wayne Lincoln had arrived at a back gate to the plant at approximately 7:55 P.M. on June 9, 1969. Employees were usually given 5 minutes to wash up before going to lunch. Kenneth Lincoln's lunch period was from 8:00 P.M. to 8:30 P.M. There were approximately 50 to 60 employees gathered around the fence and gate waiting to go on their lunch period when Ricky Lee Whitehouse, age 14, commenced pinching and goosing Kenneth Lincoln through the fence and calling him obscene names. They were both engaged in a verbal exchange with one another. Robert Valention Alvey testified "He was laughing with the boy. They were both cutting up." Ricky Lee Whitehouse in a joking manner addressed the guard at the gate and said, "Can I whip his ass?" Ricky Lee Whitehouse was only 5'1" tall and weighed approximately 125 pounds while Kenneth Wayne Lincoln was 27 years old, approximately 5'8" tall and weighed 175 pounds. When the guard unlocked the gate, Ricky Whitehouse pushed it open. Kenneth Lincoln had taken off his belt and as he stepped out of the gate Ricky Whitehouse kicked him on the leg. Lincoln in a playful and light manner struck Whitehouse on the leg with his belt. One witness testified that Lincoln barely touched him on the leg. When Kenneth Lincoln struck Whitehouse on the leg with his belt, somebody hollered from the back, "Don't hit him on the leg, hit him on the ass." Ricky Whitehouse, no longer laughing or smiling, pointed his finger at him [Lincoln] and said, "Just wait, I'll be right back,

I'll fix you." Ricky Whitehouse turned and ran across the street and went into a house three or four doors up the street.

The factory whistle had not blown for the waiting employees to leave the plant premises for their lunch period. It was customary for some of the employees to be standing just outside the gate prior to the blowing of the whistle. At 7:58 P.M., Kenneth Lincoln was leaning against the guard shack just outside the gate. Ricky Whitehouse returned to the gate with a gun in his hand. He said, "See, I have the clip, but I still have one in the chamber." Lincoln did not reply or move. Within seconds Ricky Whitehouse pulled the trigger and shot Lincoln who died before reaching the hospital.

Linda Lou Lincoln, Kenneth Lincoln's widow, filed a Form 10 Application on June 28, 1969. A hearing was held before a single member of the Industrial Board on September 29, 1969. Thereafter, a hearing was held before the Full Board on July 1, 1970 and a negative award was entered on June 16, 1971, which is as follows:

### AWARD

"IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that the Plaintiffs shall take nothing by their Form 10 Application of Dependents of Deceased Employee for the Adjustment of Claim for Compensation, filed on the 28th day of June, 1969."

The Industrial Board filed with this court the following "Additional Findings of Fact" which, after omitting the formal parts thereof, reads as follows:

"Comes now the Industrial Board of Indiana and, pursuant to the request of the Appellate Court of Indiana, now makes, enters and certifies to the Appellate Court the following additional findings of facts in the above captioned case now pending on appeal:

1. That at the time of the plaintiffs' decedent's death he was not performing any work or labor for his employer.

2. That at the time of the plaintiffs' decedent's death he was awaiting his lunch period and engaging in horse

play with a person who was not an employee and said plaintiffs' decedent was engaging in no activity beneficial to his employer.

Based upon the foregoing additional findings of fact the Full Industrial Board of Indiana now makes the following conclusions of law based thereon:

1. Plaintiffs' decedent's said injury by gunshot wound which resulted in his death did not arise out of and in the course of his employment with the defendant herein;

2. Plaintiffs' decedent's injury and subsequent death arose out of matters wholly unrelated to his employment with said defendant.

IT IS, THEREFORE, ORDERED by the Full Industrial Board of Indiana that the plaintiffs shall take nothing by their Form 10 Application."

The "Assignment of Errors" is:

1. That the award of the Full Board is contrary to law.

2. That the award is not sustained by sufficient evidence.

The Appellants'-Plaintiffs' brief reduces the error for review by this court as follows: "The issues presented for review in this Appeal to this Court is whether the award of the Full Industrial Board of Indiana is contrary to law."

If the award of the Full Industrial Board is based upon competent evidence, it will not be reversed on appeal: *Burger Chef Systems, Inc.* v. *Wilson* (1970), 147 Ind. App. 556, 262 N. E. 2d 660, [23 Ind. Dec. 174]; *Kiddie Knead Baking Co.* v. *Bolen* (1939), 106 Ind. App. 131, 17 N. E. 2d 477. We may reverse a negative award only if it appears that the Full Board's decision was erroneous as a matter of law. It is not necessary for Whirlpool Corporation to show that the negative award is supported by a preponderance of the evidence. It is the Appellants'-Plaintiffs' burden to prove their right to compensation. *Dooley* v. *Richard's Standard Service* (1969), 145 Ind. App. 470, 251 N. E. 2d 449; *Thomas Products Co., Inc.* v. *Review Board* (1969), 145 Ind. App. 425, 251 N. E. 2d 473. It is the duty of the Board to

weigh the evidence and draw reasonable inferences from the facts. In order to reach a contrary conclusion, we may not disregard any reasonable inference drawn by the Board from the facts which the evidence tends to establish. *George* v. *Interstate Metal Products, Inc.* (1955), 125 Ind. App. 406, 126 N. E. 2d 258. When reviewing the record, we are required to disregard all evidence which is unfavorable to the findings of the Board and consider only those facts and those reasonable inferences which support such findings. *Pittsburgh Testing Laboratories* v. *Kiel* (1960), 130 Ind. App. 598, 167 N. E. 2d 604.[1]

The Appellants'-Plaintiffs' burden of proof was to establish:

1) That Kenneth Lincoln was fatally injured as a result of an "accident";
2) That Kenneth Lincoln's fatal injury "arises out of" the employment with Whirlpool Corporation; and
3) That his injury occurred "in the course of" his employment with Whirlpool Corporation. IC 1971, 22-3-2-2; Ind. Ann. Stat. § 40-1202 (Burns 1971 Cum. Supp.)

The Full Industrial Board's conclusion of law No. 1 is:

"1. Plaintiffs' decedent's injury by gunshot wound which resulted in his death did not arise out of and in the course of his employment with the defendant herein; * * *"

The statutory term "arising out of" and "in the course of" are not synonymous. They are conjunctive terms. The term "arising out of" refers to the origin and cause of the "accident." The term "in the course of" refers to the time, place and circumstances under which the "accident" occurred. *Kariger Motors, Inc.* v. *Kariger* (1961), 132 Ind. App. 85, 173 N. E. 2d 916; *Tom Joyce 7 Up Co.* v. *Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998.

---

1. Exceptions to these rules which may provide the basis for reversal of either an Industrial Board's decision or a Review Board's decision can be found in *Abett* v. *Review Board* (1971), 150 Ind. App. 202, [28 Ind. Dec. 148, 152], 275 N. E. 2d 827; and *Goldstone* v. *Kozma* (1971), 149 Ind. App. 626, 274 N. E. 2d 304.

We need only concern ourselves with the term "arising out of" to determine whether the award of the Full Industrial Board is contrary to law. This is the only question presented by this appeal.

The only finding of fact which supports the Full Board's conclusion of law is the finding that "* * * at the time of the plaintiff's-decedent's death he was * * * engaged in horse play with a person who was not an employee [of the Whirlpool Corporation]." It is not particularly significant that Ricky Whitehouse was not an employee of Whirlpool Corporation. *Chicago, Indianapolis and Louisville R.R. Co.* v. *Clendennin* (1924), 81 Ind. App. 323, 143 N. E. 303.

The test of "increased risk" has evolved as a determinant of those "accidents" which occur on the outer fringes of logical employment patterns. Explaining this test in *U. S. Steel Corp.* v. *Brown* (1968), 142 Ind. App. 18, 22, 231 N. E. 2d 839; we stated:

> "A more contemporary position is that the employment must have increased the risk of injury to the employee beyond that to which the general public is exposed."

Several standards have been developed in later cases which will assist us to determine what is an "increased risk beyond that to which the general public is exposed." One such standard may be found in *Woodlawn Cemetery Association* v. *Graham* (1971), 149 Ind. App. 431, [27 Ind. Dec. 91, 94], 273 N. E. 2d 546, 548. We stated:

> "When, to a rational mind, there is a causal connection between the conditions under which the work is required to be performed and the injury which resulted, it may be said to have arisen out of the employment."

Our court has also held that the question of whether or not the injury arises out of the employment does not depend on what the employee is doing at the time the "accident" occurs, but rather it depends upon whether the "accident" was due

to a hazard which the employee would not have been exposed to had he not been performing the duties or incidental tasks of his employment. *Burroughs Adding Machine Co.* v. *Dehn* (1942), 110 Ind. App. 483, 39 N. E. 2d 499; *Hunt* v. *Gutzwiller Baking Co.* (1937), 104 Ind. App. 209, 9 N. E. 2d 129.

The resulting critical question is the causal factor. The Full Industrial Board made a finding of fact that Kenneth Lincoln was "engaging in horseplay" at the time of the accident. We need not consider the sufficiency of the evidence to support this finding of fact since the appellant has not challenged the sufficiency of the evidence supporting the Full Industrial Board's finding of fact. *State* v. *Heslar* (1971), 257 Ind. 307, [27 Ind. Dec. 281], 274 N. E. 2d 239. Therefore, the sole question confronting us is whether a person actively engaged in horseplay is barred from compensation because such an injury does not "arise out of" his employment.

Our court first recognized the horseplay doctrine in the case of *In re Loper* (1917), 64 Ind. App. 571, 573, 116 N. E. 324. Commenting on the doctrine, this court stated:

"The books contain many cases involving injuries to workmen caused or occasioned by some sportive act of a fellow workman done by him independent of or disconnected from the performance of any duty of employment, and characterized by the courts and law writers as 'practical joking,' 'skylarking,' or 'horseplay.' With practical uniformity the courts hold, both under the English act and also under the various American statutes, that an injury so suffered does not arise out of the employment within the meaning of the governing statute, and consequently that its compensatory provisions are not thereby invoked. See the following where the cases are grouped and discussed: *Matter of DeFilippis* v. *Falkenberg* (1915), 170 App. Div. 153, 155 N. Y. Supp. 761; *Federal Rubber Mfg. Co.* v. *Havolic* (1916), 162 Wis. 341, 156 N. W. 143, L. R. A. 1916D 968; *Hulley* v. *Moosbrugger* (1915), 88 N. J. Law 161, 95 Atl. 1007, L. R. A. 1916C 1203, reversing same case as reported in 87 N. J. Law 103, 93 Atl. 79; *Fishering* v. *Pillsbury* (1916), 172 Cal. 690, 158 Pac. 215; *Coronado Beach Co.* v. *Pillsbury* (1916), 172 Cal. 682, 158 Pac. 212, L. R. A. 1916F 1164;

*Pierce* v. *Boyer-Van Kuran, etc., Co.* (1916), 99 Neb. 321, 156 N. W. 509, L. R. A. 1916D 970.

In denying compensation for an injury so caused, the courts, as a rule, assign as a reason that the sportive act that results in the injury constitutes no part of the duties of the frolicsome workman, and consequently no part of the enterprise conducted by the employer, and hence that the injury does not arise out of the employment."

This court further recognized in this same case an exception to the horseplay doctrine:

"The employer, with knowledge of the facts, permitted such practice to continue. It was within his power to have prohibited it. By failing to do so, it became an ■ element of the conditions under which the employe was required to work." *In re Loper, supra,* 64 Ind. App. 580.

Other exceptions to the horseplay doctrine may exist where the instrumentalities used in the horseplay are also incidental to the work environment[2] and where the employee is an innocent victim of horseplay.[3] But, where the employee is found to have been "* * * actively engaged in the 'horseplay,' * * *," at the time of the injury, he will not be entitled to compensation. *Woodlawn Cemetery Ass'n., supra.*

The Full Industrial Board in its "Additional Findings of Fact" found that Kenneth Lincoln was "* * * engaged in horseplay * * *," thereby placing the facts in this case squarely within: *Block* v. *Fruehauf Trailer Division* (1969), 146 Ind. App. 70, [19 Ind. Dec. 489], 252 N. E. 2d 612. In the Block case, *supra* this court stated that:

"It is also true that where the employer has acquiesced in the particular conduct, or 'horseplay,' that the employee may be compensated. *Kokomo, etc., Wire Co.* v. *Irick,* 80 Ind. App. 610, 141 N. E. 796 (1923) ; *Kunkel* v. *Arnold,*

2. See Dean Small's discussion and the cases and authorities cited in his volume, WORKMEN'S COMPENSATION LAW OF INDIANA, § 6.9, p. 135.

3. *Woodlawn Cemetery Ass'n.* v. *Graham, supra.*

131 Ind. App. 219, 234, 158 N. E. 2d 660 (1959). (Transfer denied).

As a corollary to this approach, our courts have held that where 'horseplay' may be expected to occur because of the type of activity the employee is engaged in, i.e., air hose 'gooses,' then the employee may be compensated.

However, this Court has never gone so far as to say that where the 'horseplay' was not acquiesced in by the employer, not a natural condition of the employment, and where, in fact, the employee participated in the 'horseplay,' and was not, therefore, an innocent victim, that the employee should be compensated. To the contrary, we have consistently *denied* compensation in such cases for the reason that such activity does not arise out of the employment." 19 Ind. Dec. at 493, 494.

We recognize that there has been some criticism of the horseplay doctrine.[4] The validity of these criticisms is questionable. We are not persuaded.

The award of the Full Industrial Board should be and the same hereby is affirmed.

Hoffman, C.J. and Sharp, J. concur.

NOTE.—Reported in 279 N. E. 2d 596.

---

4. An excellent example of such criticism can be found in *Crilly* v. *Ballou* (1958), 353 Mich. 303, 91 N. W. 2d 493. See also 159 A. L. R. 319; Horovitz, Assaults and Horseplay under Workmen's Compensation Law, 41 Ill. L. Rev. 311 (1946).