**Linda S. BARGA, Appellant–Plaintiff,**

v.

**INDIANA FARMERS MUTUAL INSUR-ANCE GROUP, INC., Appellee–Garnishee Defendant,**

**Gerald D. Siler and Fuqua Chrysler–Plymouth, Inc., Judgment Defendants.**

No. 18A02–9610–CV–663.

Court of Appeals of Indiana.

Oct. 30, 1997.

Rehearing Denied Dec. 10, 1997.

P. Gregory Cross, Cross, Marshall, Schuck, DeWeese, Cross & Feick, Professional Corporation, Muncie, for Appellant–Plaintiff.

Robert L. Hartley, Jr., Henderson, Daily, Withrow & DeVoe, Indianapolis, for Appellee–Garnishee Defendant.

## OPINION

KIRSCH, Judge.

Linda S. Barga appeals the trial court's determination that she is not entitled to insurance coverage under a policy of insurance issued by appellee-garnishee-defendant, Indiana Farmers Mutual Insurance Group, Inc. ("Indiana Farmers"). The issue presented is whether an insurance policy provision excluding coverage for "bodily injury ... arising out of auto business operations" insulates the automobile liability insurer from liability for damages caused by the employee of an auto business while using the insured car as a personal conveyance to extensively "road test" it.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On April 7, 1988, Barga was seriously injured when a pickup truck driven by Gerald D. Siler crossed the highway center line and collided head-on with Barga's vehicle. The truck was owned by Harold Starr, a customer of Siler's employer, Fuqua Chrysler–Plymouth, Inc. ("Fuqua"). Starr had delivered the truck to Fuqua several days earlier for repairs, and Siler, a Fuqua mechanic, was assigned responsibility for repairing it. Siler could find nothing wrong with the truck, so he and Fuqua's service manager decided that Siler should drive the truck as his own personal transportation, on the theory that such extensive use would flush out any problems that might be present.

Siler drove the truck to and from work for a period of five or six days and used it as his personal vehicle, including picking up his child from the babysitter and taking the child to the doctor. On the evening of the accident, Siler punched out on the Fuqua time clock and gave his boss a ride home in the truck. Siler planned to take the truck out of town the next day on a personal errand.

Barga brought suit to recover for her injuries against Siler and Fuqua. On August 31, 1990, after a bench trial, the trial court entered judgment against the defendants for $425,000. After the limits of insurance available to the defendants were exhausted, Barga sought recovery of the outstanding balance of the judgment, $175,000, from Indiana Farmers under an automobile liability insurance policy it had issued to Starr. Indiana Farmers filed a motion for summary judgment, arguing that coverage was precluded under a clause in the policy excluding liability for "bodily injury and property damage arising out of auto business operations." *Record* at 28. Barga agreed that there was no genuine issue of material fact and also moved for summary judgment. The trial court granted Indiana Farmers' motion, and Barga now appeals.

## DISCUSSION AND DECISION

When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Goldsberry v. Grubbs*, 672 N.E.2d 475, 477 (Ind.Ct.App. 1996). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. de-*

*nied* (1995). Cross motions for summary judgment invoke the same inquiry: whether a genuine issue of material fact exists to preclude the entry of judgment as a matter of law. *L.E. Services, Inc. v. State Lottery Comm'n,* 646 N.E.2d 334, 339 (Ind.Ct.App. 1995), *trans. denied.* The parties here do not dispute the material facts. Accordingly, we must determine whether the trial court correctly applied the law to the undisputed facts. *Id.*

■ The portion of the insurance policy at issue in this case provides:

"EXCLUSIONS

. . . .

(5) **Bodily injury** or **property damage** arising out of auto business operations. But, coverage does apply to the ownership, maintenance, or use of **your insured car** in auto business operations by **you, a relative,** or anyone associated with or employed by **you** or a **relative** in the business."

*Record* at 28 (emphasis in original). Barga argues that her damages did not arise out of auto business operations because Siler was using the vehicle as a personal conveyance at the time of the accident. Indiana Farmers responds that Barga is judicially estopped from making this argument because it is based upon a position that is different than the one she took in the principal litigation against Siler and Fuqua and contends that the exclusion set out above bars recovery.

"Judicial estoppel prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted."[1] *Shewmaker v. Etter,* 644 N.E.2d 922, 931 (Ind.Ct.App.1994), *adopted on trans., Hammes v. Brumley,* 659 N.E.2d 1021 (Ind.1995). When the subsequent position is not inconsistent with the previous position, the doctrine cannot be invoked. *See Russell v. Moore,* 130 Ind.App. 351, 356, 164 N.E.2d 670, 673 (1960); 12 I.L.E. *Estoppel* § 44 (1959).

In the principal litigation, Barga argued that Fuqua was liable under the doctrine of respondeat superior for Siler's negligence oc-

curring "in the course of his employment." *Record* at 6 (Complaint). Indiana Farmers asserts that Barga took this position in order to recover from Fuqua under its insurance policy and may not now argue precisely the opposite position in order to also recover under Starr's insurance policy.

Barga claims that she is not judicially estopped from asserting that Siler was using the insured automobile as a personal conveyance because such a position is not inconsistent with her position in the primary litigation. She distinguishes the phrases "in the course of" (meaning "the circumstances under which") and "arising out of" (meaning "caused by"). She claims that her injuries occurred in the course of Siler's employment, but did not arise out of auto business operations.

We agree with Barga. To distinguish the meaning of the phrases "in the course of" and "arising out of," it is appropriate to look to workers' compensation statutes and cases where such a distinction is frequently made. In order to recover workers' compensation benefits, a claimant is statutorily required to demonstrate that his or her injury arose out of and in the course of his or her employment. IC 22–3–2–2. This court has repeatedly emphasized that these are two separate requirements. *See, e.g., Olinger Constr. Co. v. Mosbey,* 427 N.E.2d 910, 912 (Ind.Ct. App.1981). As this court explained,

"The statutory term[s] 'arising out of' and 'in the course of' are not synonymous. They are conjunctive terms. The term 'arising out of' refers to the origin and the cause of the 'accident.' The term 'in the course of' refers to the time, place and circumstances under which the 'accident' occurred."

*Lincoln v. Whirlpool Corp.,* 151 Ind.App. 190, 195, 279 N.E.2d 596, 599 (1972). Based upon these definitions, Barga is correct in stating that her accident with Siler occurred "in the course of" Siler's employment, as the trial court found, but did not "arise out of" his employment, so the auto business exclu-

---

**1.** The doctrine of judicial estoppel, rather than collateral estoppel, applies in this case because there has been only one lawsuit, one trial, and

one judgment. *See Nation v. State,* 445 N.E.2d 565, 570 (Ind.1983).

sion would not apply. Accordingly, Barga has not taken inconsistent positions in this litigation, and she is not estopped from pursuing her claim against Indiana Farmers.

The dispositive question, then, is what meaning should be given to the phrase "arising out of." Insurance contracts are subject to the same rules of construction as are other contracts; construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1337 (Ind.Ct.App. 1993). An unambiguous insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability. *Selleck v. Westfield Ins. Co.*, 617 N.E.2d 968, 970 (Ind.Ct.App.1993), *trans. denied.* An insurance contract will be deemed ambiguous only if reasonable people upon reading the contract would differ as to the meaning of its terms. *Meridian Mut. Ins. Co. v. Cox*, 541 N.E.2d 959, 961 (Ind.Ct.App.1989), *trans. denied* (1990). An ambiguity is not established by the mere existence of a controversy or by the parties' differing interpretations of the contract terms. *Id.*

■ The insurance policy at issue here is ambiguous because the phrase "arising out of business operations" is unclear. It could be construed to mean "any connection, however slight" to such operations; or "used exclusively" in such operations; or something in between.

2. Two Indiana cases, *American Family Mut. Ins. Co. v. National Ins. Ass'n*, 577 N.E.2d 969 (Ind. Ct.App.1991) and *Redar v. Allstate Ins. Co.*, 497 N.E.2d 566 (Ind.Ct.App.1985), involved the interpretation of automobile business exclusions. These cases do not control here, however, because neither exclusion included the "arising out of" language.

3. In his dissent, Judge Garrard quotes Justice Cardozo's statement, "When things are called by the same name, it is easy for the mind to slide into the assumption that the verbal identity is accompanied in all its sequence by the identity of meaning." *Dissenting opinion* at 580.

   With all due respect both to our learned colleague and to the eloquent observations of the esteemed Justice, we note that arbitrarily ascribing different meanings to the same word or phrase without adequate justification for the differentiation would lead to both linguistic and

■ When an ambiguity exists, the policy is generally construed in favor of the insured. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534 (Ind.1997). When, as here, however, the injured party is not the named insured, the policy is construed from a neutral stance. *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32, 34, 291 N.E.2d 897, 899 (1973).

■ There are no Indiana cases defining the phrase "arising out of" in the context of an auto business exclusion.[2] Nonetheless, Indiana courts have had occasion to interpret the phrase in a somewhat different context. In *Indiana Lumbermens*, a delivery truck driver was injured while delivering a water softener to a homeowner when the homeowner's basement stairs collapsed. The homeowner's liability insurer paid the claim and then sought subrogation from the insurer of the delivery truck. The automobile liability policy covered accidents "arising out of the ownership, maintenance or use" of the delivery truck. The supreme court agreed with the trial court that the "efficient and predominating cause" of the accident must arise out of the use of the vehicle in order for an accident to be covered under a policy using this language. *Id.* at 34, 291 N.E.2d at 899.

While we recognize that the present case, unlike *Lumbermens*, involves a policy exclusion, the phrase "arising out of" must have the same meaning[3] as it did with the cover-

legal chaos. Take, for example, Alice's predicament:

"I don't know what you mean by 'glory'" Alice said.

Humpty Dumpty smiled contemptuously. "Of course you don't—till I tell you. I meant 'there's a nice knock-down argument for you!'"

"But 'glory' doesn't mean 'a nice knock-down argument,'" Alice objected.

"When *I* use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." Lewis Carroll, Through the Looking Glass and What Alice Found There 124 (1872) (also quoted in *Eads v. J & J Sales Corp.*, 269 N.E.2d 888, 892 n. 1 (Ind.Ct.App.1971), in which Judge Sullivan discussed distinction between the word "record" and the word "indication," and declared that meanings of words may not be changed to accommodate a particular interpretation of a statute).

age provision at issue in *Lumbermens.*[4] That is, the "efficient and predominating cause" of the accident must have been an auto business operation in order for coverage to be excluded.[5]

■ It is undisputed that Siler was using Starr's vehicle for mixed purposes. He was test driving the vehicle to determine the nature of any mechanical problems, but was also using the vehicle for his personal business. When such a combined usage exists, a question of material fact is presented concerning what was the predominant use of the vehicle at the time the accident occurred and, thus, the efficient and predominating cause of the accident. The existence of a question of material fact makes the entry of summary judgment inappropriate.

The trial court's grant of summary judgment in favor of Indiana Farmers is reversed, and the cause is remanded for further proceedings.

SULLIVAN, J., concurs with separate opinion.

GARRARD, J., dissents with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the holding which reverses the summary judgment in favor of Indiana Farmers.

I further agree that the lawsuit against Siler and Fuqua premised upon respondeat superior does not preclude Barga's present claim. The two suits are not inherently inconsistent. It is possible for a reasonable trier of fact to conclude that Siler's personal use of the vehicle was the predominant use to which the vehicle was being put at the time and therefore removed the use from the "auto business" exclusion, but that such use was not of such extent as to remove the case from the earlier determined respondeat superior liability of Siler and Fuqua.

More disquieting, however, is the equating of the term "arising out of" with the term "caused by" as drawn from *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.* (1973) 260 Ind. 32, 291 N.E.2d 897. *See also Lincoln v. Whirlpool Corp.* (1972) 151 Ind. App. 190, 279 N.E.2d 596, 599. (In the worker's compensation area, "the term 'arising out of' refers to the origin and cause of the 'accident'".) In the *Lumbermens* case, it is not difficult to understand how the court, perhaps inadvertently, used the "caused by", or more specifically the "efficient and predominating cause" analysis. In that case, the court was faced with an insurance provision which dealt with "arising out of the ownership, maintenance or use" of the vehicle. The court held that, although the policy expressly included the loading or unloading of the vehicle as a "use", the accident did not arise out of the use of the truck. Rather, it occurred because of a negligently-maintained stairway to the basement of the residence to which a delivery was being made. In short, the court held that the accident must arise from the use of the truck. The "predominately caused by" analysis was easily seized upon as a means of resolving the issue of non-liability. The application of the "predominant cause" test is not so easily made when dealing with an "arising out of auto business operations", as here.

Certainly, the "arising out of" requirement suggests that there is a causative factor involved in the analysis. However, to say that the exclusion does not apply unless the injury is "caused by" the business operation is too simplistic. In my view, under few, if any, sets of circumstances would an injury be truly "caused by" an auto business operation. In such instances there is always some act of

---

4. In *Shelter Mut. Ins. Co. v. Barron,* 615 N.E.2d 503, 506 (Ind.Ct.App.1993), *trans. denied,* the phrase "arising out of" contained in an insurance policy exclusion was given the same "narrow construction" as it was given in *Lumbermens.*

5. The dissent contends that the issue of Indiana Farmers' liability turns upon the nature of the

permission Starr granted Siler regarding the use of Starr's truck. We disagree with the dissent's contention that such permission "was solely to repair [Starr's] truck." *Dissenting opinion* at 581. Starr's affidavit states that Fuqua representatives "advised me that one of their mechanics would be driving my truck to his home in the hopes that the problem with my truck could be identified, and subsequently repaired. I did not object to this idea." *Record* at 52.

negligence which causes the injury as opposed to the abstraction of the business operation itself. For instance, where a drop of gasoline from a negligently-welded gas tank causes a fire, the causative element may be said to be directly associated with the business operation, but the injury is not caused by the business itself. *See Allstate Ins. Co. v. Cincinnati Ins.* (1996) Ind.App., 670 N.E.2d 119 (fire caused by leaking gasoline while automobile was on a lift jack for inspection was not covered under a "while being used" policy. The policy did not involve a "maintenance or use" provision as in *Lumbermens*).

Perhaps this accounts for the selection of the term "predominant cause" in assessing insurance coverage in that "arising out of" may involve multiple "causes". That this is perhaps the correct analysis may be gleaned from the fact that the court in *Lumbermens, supra,* 291 N.E.2d at 897, in establishing the "efficient and predominating cause" as the test, did so not in the context of "caused by 'the use' " of the vehicle itself (here, it would be "caused by the business operation itself"). Rather, the court held that the efficient and predominating cause "must arise out of the use of the vehicle". *Id.* at 899. Thus the test, more accurately stated in the case before us, is whether the efficient and predominating cause, i.e. the negligent driving of the vehicle, arose out of the auto business operation. In other words, if the efficient and predominating cause of the injury was directly and inextricably associated with the conduct of the business operation, it is within the exclusion and there is no coverage.

In applying the *Lumbermens* test to the case before us, and as we hold today, a factual analysis is required as to whether the "personal use" of the vehicle predominated over the "business operation" use, i.e. the test driving.

Subject to the observations stated herein, I concur.

GARRARD, Judge, dissenting.

I respectfully dissent for two reasons. The facts are set forth in the majority opinion. After investigation, presumably including extensive discovery, Barga brought suit against Siler, the driver, and Fuqua, the car dealer, on the theory and allegation that the dealership was liable on the basis of respondeat superior because at the time of the collision Siler was driving in the course of his employment. Barga secured judgment, executed against Fuqua's insurance to the extent of its policy limits, and now seeks to recover the balance of the judgment against the insurance carried by Starr, the owner of the truck that Siler was driving. In order to do so Barga contends that at the time of the collision Siler was on a personal mission and therefore he was an insured under the terms of Starr's policy with Indiana Farmers.

Examining case law from Worker's Compensation decisions and from our supreme court's decision in *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 260 Ind. 32, 291 N.E.2d 897 (1973) the majority concludes Barga may do so. I disagree.

In *Lowden v. Northwestern Bank & Trust Co.* 298 U.S. 160, 165, 56 S.Ct. 696, 699, 80 L.Ed. 1114 (1936) Justice Cardozo observed, "When things are called by the same name, it is easy for the mind to slide into the assumption that the verbal identity is accompanied in all its sequence by identity of meaning." That seems to me to be the flaw in the majority's treatment of the exclusionary provision for injury "arising out of auto business operations."

In Worker's Compensation law the terms "arising out of" and "in the course of" have become terms of art identifying two distinct prerequisites to the statutory remedy. They should not automatically be taken to mean the same things in other contexts. The *Indiana Lumbermens* decision dealt with whether an automobile insurance policy should be read so expansively as to provide coverage when the driver of a covered vehicle fell down a flight of negligently maintained basement stairs while delivering a water softener.

In the case before us, the insurance policy in question belonged to the owner of the vehicle that Siler was driving at the time of the collision. The liability coverage provision of the policy excluded coverage for bodily injury *arising out of auto business opera-*

*tions.* I also find it noteworthy that the policy defines "insured person" as any person using the insured auto, "But no person shall be considered an insured person if the person uses a vehicle without having sufficient reason to believe that the use is with permission."

Indisputably, Starr gave Fuqua permission to repair the vehicle and, at least by implication, gave Fuqua permission to drive the pickup in order to diagnose the problem. But suppose that Siler asked Starr, "Hey, your truck is going to be here for a couple of weeks, is it okay with you if I just use it as my personal truck during that time to come to work and do my personal stuff?" Can it be seriously maintained that Starr would have agreed? The issue is not whether at the time of the collision Siler was attempting to diagnose the problem, whether he was exceeding the permission granted by Fuqua, or even whether within its authority Fuqua might grant permission for broad driving use by Siler. Those questions might have bearing on whether Fuqua was liable, but they do not concern the liability of the owner's insurer. The issue addressing that liability is the nature of the permission granted by Starr, and that permission was solely to repair his truck.

It seems to me to clearly follow that all of Siler's driving then arose out of Fuqua's auto business operations and the policy exclusion applies.

Secondly, since this is so, and since Barga took the position at the principal trial that Fuqua was liable because the collision arose from its business operations, she should not now be permitted to take the contrary view and recover from the owner's insurer on the theory that Siler's use did not arise out of auto business operations.

I dissent and would affirm the trial court.